## STROUD v STROUD

Docket No. 99774. Decided October 9, 1995. On application by the defendant for leave to appeal, the Supreme Court, in lieu of granting leave, reversed the judgment of the Court of Appeals, and reinstated the order of the circuit court.

Joe H. Stroud and Janis M. Stroud were granted a divorce in the Oakland Circuit Court, Francis X. O'Brien, J. Eight years later, the plaintiff moved for a reduction of alimony. The court denied the motion, finding that while there had been a substantial change of circumstances, they did not require modification because both parties had means more than adequate to meet their respective needs and the continued enforcement of the alimony provision would work no hardship on the plaintiff. The Court of Appeals, D. E. HOLBROOK, JR., P.J., and TAYLOR and J. D. PAYANT, JJ., reversed in an unpublished opinion per curiam (Docket No. 148641). The defendant seeks leave to appeal.

In an opinion per curiam, signed by Chief Justice BRICKLEY, and Justices RILEY, MALLETT, and WEAVER, the Supreme Court *held*:

The Court of Appeals erred in setting aside the judgment of the circuit court. The alimony provision in the original judgment of divorce was agreed upon by the parties. While there were changes in the circumstances of the parties, the original agreement clearly was written with future contingencies in mind, and the changes were of a kind that fit within the formulae on which the parties agreed, i.e., the changes were not unanticipated and were not disadvantageous to the plaintiff.

Justice BOYLE concurred in the result only.

Reversed.

Justice LEVIN, joined by Justice CAVANAGH, dissenting, stated that the determination of the Court of Appeals was not so devoid of reason as to justify peremptory reversal. Peremptory disposition, without plenary consideration, full briefing, oral argument, and an opportunity for the profession to file briefs as amici curiae, should be reserved for cases in which the law is settled and factual assessment is not required. In the instant

case, factual and legal assessment is required. Peremptory disposition is not appropriate.

The circuit court retains the power to alter the terms of alimony specified in a prior decree except alimony in gross. This rule of law applies although the parties agreed to the terms of alimony specified in the decree, and such terms reflected a compromise of the parties' respective positions before the alimony terms were agreed upon.

The judgment of divorce in this case does not provide that the alimony terms are not subject to modification, and the majority errs in equating it with such a judgment and in appearing to decide peremptorily the jurisprudentially significant question concerning which there is a split of authority. While the alimony terms in this case include an escalator clause, no decision of the Court of Appeals or of this Court has been offered holding that an agreed-upon escalator clause should be deemed to be an agreement, or should be read as if the parties had agreed, that the alimony terms are not subject to modification.

*Hardig & Parsons* (by *Joseph L. Hardig, Jr.*) for the plaintiff.

*Norman L. Zemke, P.C.* (by *Norman L. Zemke*), for the defendant.

PER CURIAM. Eight years after the parties were divorced, the plaintiff sought a change in his alimony obligation. The circuit court denied the motion, but the Court of Appeals reversed. Because the circuit court did not err, we reverse the judgment of the Court of Appeals and reinstate the order of the circuit court.

I

The parties were married in 1957 and divorced in 1981. With the consent of the parties, the judgment contained the following provision regarding alimony:

It is further ordered and adjudged that during

the joint lives of the parties, but only so long as
the defendant shall not remarry, the plaintiff shall
pay to the defendant for her support and mainte-
nance the sum of three thousand four hundred
dollars ($3,400) per month for a period of five (5)
months commencing October 1, 1981 and ending
February 28, 1982; and thereafter the sum of
twenty-five hundred dollars ($2,500) per month
beginning March 1, 1982. Commencing on
January 1, 1983, alimony paid by the plaintiff to
the defendant shall be increased in accordance
with the percentage increase in the cost of living
or the percentage increase in plaintiff's income
from his employment (including both annual
wages and bonuses), whichever percentage in-
crease is greater. The base year for computation of
increase in cost of living, as computed and docu-
mented by the United States Department of Labor,
Burear [sic] of Labor Statistics, and for computing
increase in plaintiff's income from his employ-
ment shall be 1981. All adjustments in alimony
referable to the year 1982 shall be paid on a
monthly basis in 1983, and thereafter year by year
as such increases occur. In the event that the cost
of living decreases from the previous year, or in
the event that plaintiff's income from his employ-
ment decreases from the previous year, there shall
be no reduction to the alimony, and said monthly
alimony shall remain the same as in the previous
years. Provided, however, at no time after
December 31, 1982 shall the total monthly pay-
ments exceed thirty per cent (30%) of plaintiff's
gross income from employment including both
annual wages and bonuses.

For the purposes of illustration one or the other
of the following formulas shall be used to deter-
mine increases in alimony:

FORMULA A

$$\text{Amount of future monthly payment} = \$2,500 \times \frac{\text{Consumer price index for previous December}}{\text{Consumer price index for December, 1981}}$$

—, where the consumer price index is the national index published by the United States Department of Labor, Bureau of Labor Statistics for Urban Households, (1967 = 100).

OR

FORMULA B

$$\text{Amount of future monthly payment} = \$2,500 \times \frac{\text{Plaintiff's gross income from employment for preceding year}}{\text{Plaintiff's gross income from employment for 1981}}$$

—, where gross income from employment includes both annual wages and bonuses.

From and after December 31, 1982, the alimony payments to be made by the plaintiff shall be reduced by one dollar ($1.00) for each three dollars ($3.00) in excess of one thousand dollars ($1,000) per month that the wife may earn as gross income from employment or self-employment. Gross income received by the defendant on an irregular basis shall be attributed to the period during which it was earned or over which it was accrued. The defendant shall at least annually provide the plaintiff with a verified statement of her gross income from employment or self-employment.

If the defendant remarries, the obligation of the plaintiff to make the above payments shall cease on the date of the defendant's remarriage, but the plaintiff shall be liable for any arrearage. The estate of the plaintiff shall be liable for any arrearage existing at the date of plaintiff's death.

In 1989, the plaintiff moved for a reduction in his alimony obligation.[1] In the motion and in papers subsequently filed with the court, the plaintiff stated that he was making alimony payments far in excess of the defendant's needs. For a number of years, the formulas in the alimony provision had yielded an annual payment obligation of

---

[1] Later, the plaintiff filed a first and second amended motion.

$53,460, and his total alimony payments (including the projected amount for 1991) totaled $435,450.

The plaintiff asked the court to consider eleven matters that he characterized as "material changes in circumstances involving the parties":

> (a) the defendant's financial needs are only slightly more than half the then-current $53,460 annual alimony obligation,
>
> (b) the defendant has an earning capacity of $17,250, but has turned down full-time work in order to protect her alimony rights,
>
> (c) the defendant's earning capacity, together with her actual income from interest and dividends, comes close to meeting her financial needs,
>
> (d) the plaintiff's improved financial circumstances, since the time of the divorce, are not the product of the defendant's recent contributions,
>
> (e) the defendant has inherited money and property,
>
> (f) the defendant has an annual income of $6,000 from savings and dividends that she did not have at the time of the divorce,
>
> (g) since the divorce, the defendant has accumulated an estate worth approximately $262,000,
>
> (h) the defendant has no minor children to draw on her financial resources,
>
> (i) the plaintiff has remarried and now has two small children who need support and education,
>
> (j) the plaintiff's second spouse has suffered a severe illness that has caused large medical expenses, and
>
> (k) federal tax reform measures have reduced the defendant's federal tax burden and reduced the plaintiff's alimony reduction benefit.

The plaintiff further explained that, at the time of the divorce, the parties contemplated that the defendant would need approximately $30,000 per year, and that the alimony formula would yield approximately that amount.

In response, the defendant denied many of the plaintiff's representations, and argued that the parties intended from the outset that the alimony would somewhat exceed the defendant's known financial needs.

After hearing the matter, the circuit court denied the motion for modification. In its oral opinion, the court found that it had discretion to modify the alimony agreement, but that such modification is appropriate only where there has been a substantial change of circumstances.

The court then went on to find that there *had* been such a substantial change, since the plaintiff's income had doubled, and there had also been increases in both the defendant's income and her wage-earning capacity. However, these changes did not persuade the court that the alimony obligation should be modified. The court stated that both parties "have means more than adequate to meet their respective needs" and that "[t]he continued enforcement of the alimony provision as consented to by the parties will work no undue hardship on the Plaintiff." The court continued:

> Further, considering the fact that the alimony provided at the time of the consent judgment was more than her needs in 1981, and the alimony provided at the time of the consent judgment represented approximately 30% of the Plaintiff's income in 1981. And the alimony provided [by] the consent judgment represents approximately 25% of the Plaintiff's present income.
>
> *   *   *
>
> And finally the parties having appeared to have originally agreed on what was in their judgment to be suitable maintenance, notwithstanding their needs, it is therefore the Court's decision and judgment that the Plaintiff's motion for reduction

is denied, Plaintiff having failed to sustain his burden to grant either a reduction of the present alimony or find the escalator clause in the present judgment to be invalid.

The plaintiff appealed. In an unpublished opinion,[2] the Court of Appeals determined that the alimony formula was not against public policy, and that the circuit court had authority to modify the alimony award upon a showing of a change in circumstances.[3] The Court of Appeals then explained its conclusion that the circuit court had erred:

> Finally, we find that the plaintiff met his burden of showing new facts or changed circumstances arising after the divorce judgment to warrant consideration of modification of the alimony provision. [Citation omitted.] For example, in 1989, the amount of alimony was $53,460, almost double the defendant's $27,000 in annual expenses. At the time of the divorce, the defendant was not working and had not been employed during the marriage. Since the divorce, the defendant has worked as a legal secretary and was offered a full-time position at an annual salary of $17,250. In addition, the plaintiff now has a new family and two young children. Thus, we find that the trial court clearly erred in finding that the plaintiff had failed to meet his burden of showing new facts or changed circumstances since the divorce judgment. On remand, the trial court should consider the defendant's needs in determining the amount of alimony. [Unpublished opinion per curiam, issued March 9, 1994 (Docket No. 148641), slip op, p 2.]

[2] Unpublished opinion per curiam, issued March 9, 1994 (Docket No. 148641).

[3] As explained in *Pinka v Pinka,* 206 Mich App 101; 520 NW2d 371 (1994). In light of the disposition of this case, we assume, without holding, that the alimony provision in this case is subject to modification. However, we need not elaborate upon that distinction.

The defendant has applied to this Court for leave to appeal.

## II

The Court of Appeals erred in setting aside the judgment of the circuit court. Toward the end of its analysis it stated, "we find that the trial court clearly erred in finding that the plaintiff had failed to meet his burden of showing new facts or changed circumstances since the divorce judgment." Slip op, p 2. In fact, the circuit court explicitly found that

> the pleadings, stipulations, evidence and arguments in this case clearly show there has been a substantial change in circumstances since the judgment was entered including but not limited to the Plaintiff's income has doubled. The Defendant's income and her ability to earn has increased.
> The Plaintiff has incurred increased expenses. There are now tax ramifications. The cost of living has increased. . . .
> [T]he circumstances that have not changed in this matter are the needs of the Defendant and the Plaintiff's ability to pay.

In saying that the circuit court erred by failing to find "new facts or changed circumstances," the Court of Appeals was focusing on the circuit court's failure to find increased earning potential on the part of the defendant. However, that single aspect of the case does not warrant overturning the judgment of the circuit court. The original alimony formula is independent of the defendant's earning potential, and it is far from remarkable that the defendant now has an earning potential of $17,000 per year. Absent a known impediment

to wage-earning capacity or an obligation such as care-provider for young children, many (perhaps most) adults can earn that much money in a year.

As the circuit court observed, the alimony provision found in the original judgment of divorce was agreed upon by the parties. While the circuit court correctly observed that there have been changes in the circumstances of the parties, the original agreement clearly was written with future contingencies in mind. Even though the parties could not have foreseen the exact income levels that were reached during the 1980s, the changes were of a *kind* that fit neatly within the formulae upon which the parties agreed. Put another way, the changes were not *unanticipated* changes.

In 1982, the first full year following the judgment of divorce, the plaintiff's total income was $115,347, and he paid $32,700 in alimony. This represented 28.3 percent of his income. In 1989, the year the plaintiff filed his motion to modify, his income was $362,012 and his alimony payments were $53,460.[4] That is only 14.8 percent of his income. The projected figures for 1991 (the last year that is reflected in this record) were an income of $184,088 and an alimony obligation that remained at $53,460. This is 29 percent.[5]

---

[4] Under the terms of the divorce judgment, the alimony obligation rises in response to changes in the plaintiff's "income from his employment (including both annual wages and bonuses)." His total income includes various types of compensation that are not "wages and bonuses."

[5] The fluctuations in the plaintiff's earnings are caused by the significant bonuses that were paid to him in the late 1980s, in connection with the Joint Operating Agreement. The plaintiff explained to the circuit court:

> Because of the unusual facts surrounding the viability of *The Detroit Free Press* and *The Detroit News* in the Detroit market and the difficulty of ascertaining whether or not the Joint Operating Agreement would ever be put into effect, *The Detroit Free Press* established a special Joint Operating Agreement

Further, the changes of the 1980s were not disadvantageous to the plaintiff. Though the dollar amount of his alimony obligation rose during the 1980s, that increase occurred only as the result of the very favorable situation in which he found himself at his place of employment. While the plaintiff finds the current situation not to his liking, there is no sign that it is working a hardship on him, or causing him difficulties that could not readily have been foreseen at the time of the consent judgment.

It thus appears that the plaintiff's 1989 motion was actually a tardy attack on the original judgment of divorce. That judgment was agreed to by the parties, and likely reflected a compromise of the parties' respective positions at the time. For example, it is possible that the defendant accepted less property at the time of the judgment, relying instead on the promise of significant alimony in years to come.

The circuit court found that the financial situation of the parties had changed since 1981, but that those changes did not warrant a change in the alimony obligation. For the reasons above, we conclude that the circuit court did not err.[6]

Accordingly, we reverse the judgment of the Court of Appeals and reinstate the order of the

Retention Bonus Plan designed to keep key personnel (Stroud being one) at *The Detroit Free Press* during the troublesome and uncertain years involving the Joint Operating Agreement. Most of this special bonus was paid to Stroud, in 1988 and 1989.

[6] In appellate review of a circuit court ruling in a divorce controversy of this sort, factual findings are upheld unless clearly erroneous, and dispositional rulings are upheld unless the appellate court is left with the firm conviction that the ruling was not fair and equitable in light of the facts. See *Beason v Beason,* 435 Mich 791, 805; 460 NW2d 207 (1990), *Sparks v Sparks,* 440 Mich 141; 485 NW2d 893 (1992), and *Sands v Sands,* 442 Mich 30, 34; 497 NW2d 493 (1993).

circuit court that denied the plaintiff's motion to modify. MCR 7.302(F)(1).

BRICKLEY, C.J., and RILEY, MALLETT, and WEAVER, JJ., concurred.

BOYLE, J., concurred in the result only.

LEVIN, J. (*dissenting*). I would deny leave to appeal from the interlocutory decision of the Court of Appeals, and dissent from the peremptory reversal of the Court of Appeals. I could join in an order granting leave to appeal to consider the jurisprudentially significant issue, decided without oral argument or plenary consideration in the majority opinion.

I

While the majority prefers the assessment of the circuit judge, who granted the defendant summary disposition, the determination of the Court of Appeals was not so devoid of reason as to justify peremptory reversal. The majority's decision to peremptorily reverse the decision of the Court of Appeals belittles its efforts, in the disposition of this case, as reflected in its carefully written opinion,[1] and deprives Joe H. Stroud and his counsel of an opportunity to fully brief and orally argue in support of the decision of the Court of Appeals.

Today's peremptory order reflects an increasingly common method of deciding cases, a method that does not provide safeguards against hasty and ill-considered decisions, a method that is unsafe.

When this Court grants leave to appeal, there is an opportunity to educate the justices concerning

[1] Unpublished opinion per curiam, issued March 9, 1994 (Docket No. 148641).

the state of the record and the law through oral argument, as well as visually through briefs. A justice who may have missed a significant point of law or fact on perusal of the materials considered before voting for peremptory reversal might be enlightened and persuaded in the course of oral argument.

Also lost, when this Court acts without plenary consideration, is the opportunity for conference discussion after oral argument.

Peremptory disposition, without plenary consideration, full briefing, oral argument, and an opportunity for the profession to file briefs as amici curiae, should be reserved for cases in which the law is settled and factual assessment is not required.[2] In the instant case, factual and legal

[2] *People v Wright,* 439 Mich 914, 914-915 (1992) (LEVIN, J., dissenting); *Roek v Chippewa Valley Bd of Ed,* 430 Mich 314, 322; 422 NW2d 680 (1988) (LEVIN, J., separate opinion); *Grames v Amerisure Ins Co,* 434 Mich 867, 868-875 (1990) (LEVIN, J., dissenting); *People v Little,* 434 Mich 752, 769-770; 456 NW2d 237 (1990) (LEVIN, J., dissenting); *People v Wrenn,* 434 Mich 885, 885-886 (1990) (LEVIN, J., dissenting); *Harkins v Northwest Activity Center, Inc,* 434 Mich 896, 899 (1990) (LEVIN, J., dissenting); *Dep't of Social Services v American Commercial Liability Ins Co,* 435 Mich 508, 515; 460 NW2d 194 (1990) (LEVIN, J., separate opinion); *Yahr v Garcia,* 436 Mich 872, 872-873 (1990) (LEVIN, J., dissenting); *Universal Underwriters Ins Co v Vallejo,* 436 Mich 873, 873-874 (1990) (LEVIN, J., dissenting); *People v Stephens,* 437 Mich 903, 903-910 (1991) (LEVIN, J., dissenting); *People v Berkey,* 437 Mich 40, 54; 467 NW2d 6 (1991) (LEVIN, J., dissenting); *Turner v Washtenaw Co Rd Comm,* 437 Mich 35, 38-39; 467 NW2d 4 (1991) (LEVIN, J., separate opinion); *Lepior v Venice Twp,* 437 Mich 955, 956-966 (1991) (LEVIN, J., dissenting); *Rochester Hills v Southeastern Oakland Co Resource Recovery Authority,* 440 Mich 852, 852-856 (1992) (LEVIN, J., dissenting); *In re Reinstatement of Eston (Grievance Administrator v Eston),* 440 Mich 1205, 1205-1207 (1992) (LEVIN, J., dissenting); *In re Reinstatement of Callanan,* 440 Mich 1207, 1207-1209 (1992) (LEVIN, J., dissenting); *McFadden v Monroe Civil Service Comm,* 440 Mich 890, 890-891 (1992) (LEVIN, J., dissenting); *Holly Twp v Dep't of Natural Resources (Holly Twp v Holly Disposal, Inc),* 440 Mich 891, 891-893 (1992) (LEVIN, J., dissenting); *Marzonie v ACIA,* 441 Mich 522, 535-539; 495 NW2d 788 (1992) (LEVIN, J., dissenting); *People v Waleed,* 441 Mich 902, 902-903 (1992) (LEVIN, J., dissenting); *People v Hardison,* 441 Mich 913, 914-916 (1993) (LEVIN, J., dissenting); *People v Justice,* 441 Mich 916, 917-919 (1993) (LEVIN, J.,

assessment is required. Peremptory disposition is
not appropriate.

## II

The majority states that it "appears that the
plaintiff's 1989 motion [seeking a reduction in
alimony] was actually a tardy attack on the origi-
nal judgment of divorce,"[3] which "was agreed upon
by the parties."[4] "Put another way, the changes [in
the circumstances of the parties] were not unanti-
cipated changes," and "the original agreement
clearly was written with future contingencies in
mind."[5] The majority restates the truism that the
"judgment was agreed to by the parties" and
assumes that it "likely reflected a compromise of
the parties' respective positions at the time," and
states that "it is possible that the defendant ac-
cepted less property at the time of the judgment,
relying instead on the promise of significant ali-
mony in years to come."[6]

dissenting); *People v LaClear,* 442 Mich 867, 867-871 (1993) (Levin, J.,
dissenting); *Auto-Owners Ins Co v City of Clare,* 446 Mich 1, 16-18;
521 NW2d 480 (1994) (Levin, J., dissenting); *Weisgerber v Ann Arbor
Center for the Family,* 447 Mich 963, 964-969 (1994) (Levin, J.,
dissenting); *Howard v White,* 447 Mich 395, 405-410; 523 NW2d 220
(1994) (Levin, J., dissenting).

See *Schweiker v Hansen,* 450 US 785, 791; 101 S Ct 1468; 67 L Ed
2d 685 (1981) (Marshall, J., dissenting) ("A summary reversal is a rare
disposition, usually reserved by this Court for situations in which the
law is settled and stable, the facts are not in dispute, and the decision
below is clearly in error"); *Leis v Flynt,* 439 US 438, 457-458; 99 S Ct
698; 58 L Ed 2d 717 (1979) (Stevens, J., dissenting) ("Summary
reversal 'should be reserved for palpably clear cases of . . . error.'
*Eaton v Tulsa,* 415 US 697, 707 [94 S Ct 1228; 39 L Ed 2d 693 (1974)]
[Rehnquist, J., dissenting]").

[3] *Ante,* p 551.

[4] *Id.,* p 550.

[5] *Id.*

[6] *Id.,* p 551.
The majority states:

As the circuit court observed, the alimony provision found in

I suppose that most petitions for a change in alimony could be characterized by the opposing party as a "tardy attack on the original judgment of divorce." It is well settled, however, that "[t]he circuit court retains the power to alter the terms of alimony specified in a prior decree" except alimony in gross.[7] This rule of law applies although the parties agreed to the terms of alimony specified in the decree, and such terms reflected a compromise of the parties' respective positions before the alimony terms were agreed upon.

The judgment of divorce in this case does not provide that the alimony terms are not subject to modification. It appears that where there is such a

> the original judgment of divorce was *agreed upon by the parties.* While the circuit court correctly observed that there have been changes *in the circumstances of the parties,* the *original agreement clearly was written with future contingencies in mind.* [Emphasis added.] Even though the parties could not have foreseen the exact income levels that were reached during the 1980s, the changes were of a *kind* that fit neatly within the formulae upon which the parties agreed. Put another way, the changes were not *unanticipated* changes. [Emphasis in original.]
>
> * * *
>
> Further, the changes of the 1980s were not disadvantageous to the plaintiff. Though the dollar amount of his alimony obligation rose during the 1980s, that increase occurred only as the result of the very favorable situation in which he found himself at his place of employment. While the plaintiff finds the current situation not to his liking, there is no sign that it is working a hardship on him, or causing him difficulties that could not readily have been foreseen at the time of the consent judgment.
>
> It thus appears that the plaintiff's 1989 motion was actually a *tardy attack on the original judgment of divorce. That judgment was agreed to by the parties,* and *likely reflected a compromise of the parties' respective positions at the time.* For example, it is possible that the defendant accepted less property at the time of the judgment, relying instead on the promise of significant alimony in years to come. [*Ante,* pp 550-551. Emphasis added.]

[7] 2 Curtis, Bassett & Collins, Michigan Family Law (4th ed), § 13.38, p 13-29.

provision "[t]here is a split of authority about whether the court still retains jurisdiction to modify and amend a decree that concerns alimony and support."[8] The majority errs in equating the judgment of divorce in the instant case with one providing that the alimony terms are not subject to modification, and in appearing to decide peremptorily the jurisprudentially significant question concerning which there is a split of authority.

The alimony terms in this case include an escalator clause,[9] but our attention has not been drawn to a decision of the Court of Appeals or of this Court holding that an agreed-upon escalator clause should be deemed to be an agreement, or should be read as if the parties had agreed, that the alimony terms are not subject to modification.

Peremptory disposition is not appropriate in this case. Leave to appeal should either be granted or denied.

CAVANAGH, J., concurred with LEVIN, J.

---

[8] *Id.*

[9] See *id.*, § 13.39, p 13-30.