603 N.W.2d 278 (1999)
237 Mich. App. 805
Robert William STAPLE, Plaintiff-Appellee,
v.
Marcella Ann STAPLE, Defendant-Appellant.
Docket No. 204026.
Court of Appeals of Michigan.
Released August 20, 1999, at 9:30 a.m.
Vacated September 8, 1999.
Released for Publication December 1, 1999.
Before: WHITBECK, P.J., and MARKMAN and O'CONNELL, JJ.

ORDER
Staple v. Staple, Docket No. 204026. The Court orders that a special panel shall be convened pursuant to MCR 7.215(H) to resolve the conflict between this case and Bonfiglio v. Pring, 202 Mich.App. 61, 507 N.W.2d 759 (1993).
The Court finds under MCR 7.215(H)(5) that the conflict in question is the only issue addressed in this case and orders that the opinion released August 20, 1999, is vacated in its entirety.
The appellant may file a supplemental brief within 21 days of the clerk's certification of this order. Appellee may file a supplemental brief within 21 days of service of appellant's brief. Nine copies must be filed with the Clerk of the Court.
PER CURIAM.
Defendant Marcella Ann Staple appeals by leave granted an order denying her motion requesting an increase in the amount and term of alimony, arguing that the trial court clearly erred in determining that the award in the parties' consent judgment of divorce was nonmodifiable alimony "in gross." She argues that the consent judgment in fact provides for alimony subject to modification. But for MCR 7.215(H), we would reverse the trial court's decision. However, as we will discuss more fully in this opinion, MCR 7.215(H) requires us to affirm.

I. Basic Facts And Procedural History
The parties were married in February 1969. In late June 1990, Robert Staple filed for divorce after twenty-one years of marriage; at that time, Robert Staple was approximately forty-three years old while Marcella Staple was approximately forty years old. The parties had three children during their marriage, one of whom was an adult at the time of the divorce. In late March 1990, Marcella Staple was severely injured in an automobile accident that left her a permanent paraplegic. Marcella Staple also suffered from thyroid cancer in the past and had been informed seven years earlier that this cancer could return within eight years.
The parties reached a settlement regarding all issues relating to the divorce and apparently agreed to allow the minor children to choose the parent with whom they wished to reside and that Robert Staple would pay child support payments of $50 a week until all the children reached the age of majority, regardless of where they chose to reside. In addition, the parties apparently agreed that Marcella Staple would pay no child support regardless of where the children resided.
With regard to the amount and term of alimony and child support, the parties agreed that Robert Staple was obligated to pay Marcella Staple: (1) $200 a week through the first year following the divorce; (2) $225 a week through the second and third years following the divorce; (3) $150 a week through the fourth year following the divorce; and (4) $75 a week through the fifth and sixth years following the divorce. (These payments included the $50 child support payments). The parties also agreed that Robert Staple's alimony payments would be reduced in the event that Marcella Staple obtained employment and her gross income from that employment exceeded $1,200 a month. Robert Staple's counsel explained that "for *279 every dollar over $1,200 [Marcella Staple] receives, [Robert Staple] will get a reduction of 50 cents." The parties also agreed that Robert Staple's support obligations would end in the event that Marcella Staple either died or remarried. These terms were incorporated into the consent judgment. Robert Staple also agreed to maintain Marcella Staple "in full force and effect" on his health care insurance received through his employment.
In mid-April 1997 the trial court conducted a hearing regarding Marcella Staple's motion for an increase in the amount and term of the alimony award provided for in the consent judgment of divorce. Marcella Staple argued that the alimony award was periodic alimony and was subject to modification upon a showing of changed circumstances. Marcella Staple emphasized that there was no judicial intent with respect to whether it should be periodic alimony or alimony "in gross" because the parties had agreed to the award. Marcella Staple also noted that child support affected the amount of monthly payments and argued that there was no "sum specific" because it could be reduced if Marcella Staple were to begin earning more than $1,200 a month in income. In addition, Marcella Staple pointed out that there is no alimony "in gross" clause in the consent judgment. Marcella Staple also stressed that Robert Staple would no longer be required to pay alimony in the event of her death or remarriage. Robert Staple argued primarily that the alimony award was limited to a six-year duration and therefore represented an intent for alimony "in gross."
The trial court ruled that the alimony provision contained in the consent judgment of divorce was nonmodifiable alimony "in gross." The trial court based its decision on Bonfiglio v. Pring, 202 Mich.App. 61, 507 N.W.2d 759 (1993), noting that because
[Bonfiglio holds] that the inclusion of a survivor or remarriage contingency in an alimony provision does not automatically or conclusively create modifiable alimony, the court should focus on the intentions of the parties in negotiating a settlement agreement and give effect to that intent.
The trial court considered (1) that the alimony was to end upon the death or remarriage of Marcella Staple, (2) that it was taxable to Marcella Staple and deductible to Robert Staple, and (3) that there were "a number of contingencies" regarding the alimony provision. However, the trial court noted that these were "mathematically determinable" and that the alimony award had a fixed maximum. The trial court held that with the exception of some contingencies based on the occurrence of specific events, the six-year alimony award represented a sum certain and therefore constituted alimony "in gross." The trial court concluded by finding that Marcella Staple was not entitled to alimony beyond the six-year period specified in the consent judgment of divorce. Thus, because the trial court relied directly on the reasoning and holding in Bonfiglio, we are squarely presented with the question whether that case was correctly decided.

II. Standard Of Review
We review factual findings of the trial court for clear error. Beason v. Beason, 435 Mich. 791, 805, 460 N.W.2d 207 (1990), (After Remand), 204 Mich.App. 178, 514 N.W.2d 231 (1994), rev'd 447 Mich. 1023, 527 N.W.2d 425 (1994). We initially presume factual findings to be correct, and it is the burden of the appellant to show that they are clearly erroneous. A finding is clearly erroneous if, after examining all the evidence, this Court is left with a definite and firm conviction that a mistake has been made. Id. If the trial court's factual findings are not clearly erroneous, then this Court must determine whether the trial court's dispositional ruling was fair and equitable in light of those factual findings. Sparks v. Sparks, 440 Mich. 141, 152, 485 N.W.2d 893 (1992).

*280 III. Statutory Provisions And The Alimony In Gross Exception
We begin our analysis with the observation that Michigan has had in effect since 1846 a statute that allows a trial court to revise and alter judgments of divorce. In particular, M.C.L. § 552.28; MSA 25.106, as in effect at the time of the parties' judgment of divorce, provided in pertinent part:
After a judgment for alimony or other allowance, for either party and children, or any of them, ... the court may, from time to time, on the petition of either of the parties, revise and alter such judgment, respecting the amount of such alimony or allowance and the payment thereof.... [1]
In light of the plain language of M.C.L. § 552.28; MSA 25.106 and its predecessors, one might initially question why case law does not regard the circuit court as having the statutory authority to modify any award of alimony, regardless of whether it is classified alimony "in gross" or periodic alimony. Nevertheless, long ago (and while a predecessor version of the statute was in effect), the Michigan Supreme Court stated, "Where a gross or lump sum in money or in property is awarded as alimony to the wife, the power of the court is at an end and there then is no power to modify it later." Kutchai v. Kutchai, 233 Mich. 569, 575, 207 N.W. 818 (1926); accord Edgar v. Edgar, 366 Mich. 580, 587, 115 N.W.2d 286 (1962). Thus, the somewhat anomalous situation in Michigan is that we appear to have a judicially created exception to what would otherwise be the fairly clear statutory language that provides for revision of judgments of divorce "respecting the amount of such alimony or allowance," without the slightest distinction between alimony "in gross" and periodic alimony.
However, because it is not the function of this Court to overrule binding precedent of the Michigan Supreme Court, one could conclude that we are faced here only with the question whether the trial court properly categorized Robert Staple's alimony obligations as alimony "in gross." If we were to find that categorization to be accurate, in light of Kutchai, Edgar, and their progeny as well as Bonfiglio, one would then be forced to conclude that our inquiry would simply be at an end.
We do not believe, however, that the inquiry is quite so simple. Rather, we believe that a proper consideration of the law in this area in Michigan should include an analysis of the concept of alimony "in gross" as similar to property.

IV. Alimony "In Gross" As Similar To Property
InKutchai, supra at 573, 207 N.W. 818, the Michigan Supreme Court noted that
[with regard to] the division of the property between the parties, and the property which the husband is permitted to retain and as to which dower and all claims of the wife are barred, the decree is not subject to be modified or altered. It is final, at least as final as other decrees.
Thus, the implicit rationale in Kutchai for regarding alimony "in gross" as nonmodifiable was that it may have been deemed part of the final property division between the parties. We observe that this is generally sensible with regard to payments of a definite amount over a limited period because this involves a final determination of an amount of property, namely, money, to be transferred from one party to the other. In this regard, alimony "in gross" is much like the express property settlement provisions of a judgment of divorce that "may not be set aside, modified, or altered in the absence of fraud, duress, or mutual mistake, or for such causes as any other final decree may be modified." Keeney v. Keeney, 374 Mich. 660, 663, 133 N.W.2d 199 (1965).
*281 Our view of the distinction between modifiable periodic alimony and alimony "in gross" is further supported by the following language in Pierson v. Pierson, 351 Mich. 637, 645, 88 N.W.2d 500 (1958):
Under the provision of the statute, CL 1948, § 552.28 (Stat. Ann. 1957 Rev. § 25.106) [a predecessor to the current M.C.L. § 552.28; MSA 25.106], the provisions of a divorce decree relating to alimony or other allowances for the support of the wife and children are subject to modification. Such provisions, however, do not apply to property settlements, including awards in lieu of dower. [Emphasis supplied.]
If payments of alimony "in gross" are regarded as being made to a party as part of that party's entitlement in the property division, then it is our view that such payments do not terminate upon the recipient party's death because the recipient of such alimony "in gross" is able to pass those payments on to the recipient's heirs or beneficiaries as part of that recipient's property. Although this is somewhat counterintuitive, we note that the Michigan Supreme Court in Hagerty v. Hagerty, 222 Mich. 166, 168-169, 192 N.W. 553 (1923), held that the obligation to pay an award of alimony "in gross" was not affected by the death of the recipient spouse. Similarly, citing Hagerty, this Court had noted, before Bonfiglio, that "the obligation to pay alimony in gross is not affected by the death of either party." Hall v. Hall, 157 Mich.App. 239, 242, 403 N.W.2d 530 (1987). Accordingly, the Hall panel concluded that an award of alimony that provided that alimony was to terminate upon the death of the recipient spouse constituted modifiable periodic alimony rather than alimony "in gross." Id. at 242-243, 403 N.W.2d 530. The Hall panel also observed more generally that "if the obligation is terminable upon the occurrence of a contingency, then the alimony is not in gross, but is permanent periodic alimony subject to modification." Id. at 241, 403 N.W.2d 530.[2]
Thus, it is our view that the inclusion of a provision in a judgment of divorce that payment of alimony ceases upon the death or remarriage of the recipient party, as in the judgment in Bonfiglio and in the judgment in the case at hand, means that the alimony award should not be considered alimony "in gross," because it is not being treated as akin to the property that passes through the recipient's estate. Rather, alimony that terminates upon the death or remarriage of the recipient party is periodic alimony and should therefore be modifiable pursuant to M.C.L. § 552.28; MSA 25.106.
Simply put, therefore, it is our view that alimony "in gross" is not modifiable because *282 it is not truly alimony but is, rather, similar toproperty while periodic alimony is modifiable, under the statute, because it is in fact alimony. The inclusion of language that terminates the payment of alimony upon the death or remarriage of the recipient would, under this view, conclusively establish that such alimony was periodic alimony because, self-evidently, such payment would not be treated as similar to the property in the recipient's estate. Conversely, language that provides for continued payment without regard to contingenciesor the absence of language providing for termination of payment upon any contingencieswould conclusively establish that such alimony was not in fact alimony at all but was similar to property and therefore nonmodifiable.
We also note that the inclusion of contingencies, as in the judgment in Bonfiglio and in the judgment in the case at hand, inherently reflects that the award of alimony is in substantial part an allowance for support of the recipient spouse because the contingencies relate to events that eliminate or reduce the need for such support. By the very inclusion of such contingencies, the alimony award is not akin to property that can be characterized as alimony "in gross." In sum, if Bonfiglio did not require a contrary result, we would conclude that the alimony provided for by the judgment in the case at hand is "alimony" within the meaning of M.C.L. § 552.28; MSA 25.106 because it is an "allowance" for Marcella Staple and thus it is modifiable pursuant to statute.

V. Bonfiglio

Bonfiglio, however, compels the opposite result. In Bonfiglio, the panel noted that a conflict existed in the pre-1990 decisions of this Court regarding whether contingency provisions for the termination of alimony upon death or remarriage make the alimony amount unascertainable and thus modifiable periodic alimony. Citing Hall for the "bright-line" approach, the Bonfiglio panel stated that this approach
distinguish[es] periodic alimony from alimony in gross and conclude[s] that if the alimony provision contains a contingency for termination in the event of the death of the recipient, then the alimony is deemed to be periodic alimony, which is subject to modification. [Bonfiglio, supra at 63-64,507 N.W.2d 759.][3]
The Bonfiglio panel contrasted this "bright-line" approach with cases that have "endorsed an approach that focuses on the intent behind the alimony provision, regardless of a remarriage or a survivorship contingency." Id. at 64, 507 N.W.2d 759.[4]
Much of the reasoning of the "intent" cases cited favorably by Bonfiglio, supra at 64-65, 507 N.W.2d 759, essentially rests *283 on a policy perspective that parties to a divorce should be able to contract regarding the settlement of their cases, including whether an award of alimony will be nonmodifiable or modifiable. Under this approach, the classification of alimony payments as nonmodifiable alimony "in gross" or as periodic modifiable alimony depends on the intent of the parties with regard to modifiability regardless of whether there are contingencies. However, whatever the merits of such policy considerations, we are of the view that they do not justify departing from the statutory language of M.C.L. § 552.28; MSA 25.106 providing that alimony in the form of an allowance for a party is subject to modification by the circuit court.
Where provisions for the payment of alimony include contingencies related to the recipient spouse's relative need for support, we believe that the alimony in Bonfiglio (and the alimony at issue here) are not within the scope of alimony "in gross" as contemplated by Michigan Supreme Court precedent and, further, that a proper application of M.C.L. § 552.28; MSA 25.106 requires that such alimony be considered modifiable periodic alimony under that statute. For these reasons, we conclude that Bonfiglio was wrongly decided in holding that an award of alimony that contains contingencies triggered by the death or remarriage of the recipient spouse can ever constitute alimony "in gross." Rather, such an award of alimony should be considered always to constitute periodic alimony subject to modification by the circuit court under the authority granted by M.C.L. § 552.28; MSA 25.106.
However, there is no question that Bonfiglio applies and controls here and that the trial court correctly applied the holding in Bonfiglio to the circumstances of this case. Therefore, pursuant to MCR 7.215(H), we must follow and apply the holding of the opinion in Bonfiglio that compels us, reluctantly, to affirm. But for the holding of the opinion in Bonfiglio, we would reverse on the grounds that the alimony at issue here was not akin to property and was therefore modifiable periodic alimony, an approach that we believe harmonizes the provisions of M.C.L. § 552.28; MSA 25.106 with precedent of the Michigan Supreme Court with respect to alimony "in gross."

VI. Rickner

In her supplemental authority and at oral argument, Marcella Staple cited the recently decided case of Rickner v. Frederick, 459 Mich. 371, 590 N.W.2d 288 (1999), for the proposition that a trial court, on the petition of either party, may modify any award of alimony at any time regardless of whether the award is classified as alimony "in gross" or periodic alimony.
Certain language in Rickner directly supports the position that we would adopt, but for Bonfiglio, here. In particular, the Court stated:
In this instance, we are faced with a statute that simply provides that "[o]n petition of either party, after a judgment for alimony ... the court may revise and alter the judgment, respecting the amount or payment of the alimony .... and may make any judgment respecting any of the matters that the court might have made in the original action." This is a case in which the court originally provided alimony, and thus continuing jurisdiction is plainly provided by the statute.
This conclusion is buttressed by the absence of a prior Michigan appellate decision holding that the statutory power to modify is extinguished if it is once exercised to eliminate alimony. Further, the statutory power to modify is not dependent on triggering language in the judgment. Butler v. Butler [356 Mich. 607, 616-617, 97 N.W.2d 67 (1959)].
For these reasons, we are persuaded that the proper reading of the statute is that the Legislature intends, in cases in which alimony is initially ordered, that the court, retain the power to make necessary *284 modifications in appropriate circumstances. [Rickner, supra at 378-379, 590 N.W.2d 288 (emphasis supplied).]
Clearly, the Court's reading of M.C.L. § 552.28; MSA 25.106 accords with the view we have set out above. However, the facts of Rickner involved an initial award of periodic alimony, with an explicit reservation of continuing jurisdiction in the trial court, that was subsequently canceled with regard to alimony charges accruing after September 16, 1992, with a subsequent order by the trial court that "[t]he file is to be closed." Rickner, supra at 375, 590 N.W.2d 288. Thus, the Court did not consider the view that alimony "in gross" is actually part of the property settlement and therefore not subject to M.C.L. § 552.28; MSA 25.106, nor did it revisit the issue of the various contingencies that may serve to make an alimony award periodic alimony that is modifiable under the statute. Indeed, in footnote 2, the Court stated:
In the course of this litigation, both parties have sought to modify the alimony (the defendant by motion and the plaintiff by request to the Friend of the Court). Thus, it is apparent that both accept that the original award was subject to modification. Accordingly, as in Stroud v. Stroud, 450 Mich. 542, 548, n. 3, 542 N.W.2d 582 (1995), we have no occasion to revisit the principles governing when alimony is subject to modification and when it is not. [Rickner, supra at 373, n. 2, 590 N.W.2d 288 (emphasis supplied).]
Here, we have revisited the principles governing when alimony is subject to modification and when it is not. Rickner, thereforealthough its comments concerning the applicability of M.C.L. § 552.28; MSA 25.106 are certainly enlightening and in accord with our views herecannot be read as controlling the case before us.

VII. Conclusion
We conclude that, in light of the plain language of M.C.L. § 552.28; MSA 25.106 and its predecessors, a trial court has the statutory authority to modify any true award of alimony. If alimony "in gross" is not a true award of alimony, then we think, in line with the language of the Michigan Supreme Court decisions that we have cited above and in light of the fact that such alimony "in gross" can pass through a deceased recipient's estate and can continue upon the remarriage of a recipient, that such alimony "in gross" can be correctly viewed as analogous to property. We believe that this view harmonizes the provisions of the statute with the applicable precedents of the Michigan Supreme Court.
It is our further view that the inclusion of language that terminates the payment of alimony upon the death or remarriage of the recipient conclusively establishes that such alimony was periodic alimony because such payment is not part of the property in a deceased recipient's estate. Conversely, language that provides for continued payment regardless of any contingenciesor the absence of language providing for termination of payment upon any contingenciesconclusively establishes that such alimony was not in fact alimony at all but was akin to property and therefore nonmodifiable.
We recognize that these views are in conflict with Bonfiglio. We therefore affirm as required by MCR 7.215(H) and hold that the alimony in question was nonmodifiable. But for Bonfiglio, we would reverse and hold the alimony to be modifiable.
Affirmed.
NOTES
[1] While this statutory provision was thereafter amended, effective January 1, 1993, the current version is in pertinent part substantively identical to the above version.
[2] We note our concern with respect to the need for certainty in this complex area of practice. We are of the view, however, that return to a "bright-line" rule (i.e., that provisions that state that the alimony in question will terminate upon the death or remarriage of the recipient conclusively establish that the alimony is periodic alimony while, conversely, language that provides for continued payment regardless of any contingenciesor the absence of language providing for termination of payment upon contingenciesconclusively establishes that the alimony is alimony "in gross") would produce more rather than less certainty in this area of the law. Thus, for example, if the parties to a divorce settlement include language providing for the termination of alimony upon the death or remarriage of the recipient, they would know that they are providing for alimony that is modifiable in the future but that is also taxable to the party receiving the payment and deductible by the party making the payment. This knowledge, we believe, would heighten rather than diminish the parties' ability to deal with the practical considerations inherent in most divorces, including the tax consequences.

We emphasize that we have no occasion to revisit the process concerning how spousal support and property are awarded. In particular, while we view alimony "in gross" as akin to property, we recognize that, in practice, it has often been viewed as an element of spousal support. The "bright-line" approach that we would, but for Bonfiglio, adopt to harmonize the provisions of the statute with the decisions of the Supreme Court would, we believe, bring a degree of certainty to the negotiations that commonly take place in divorce actions, including negotiations over the award of spousal support and the property settlement.
[3] The Bonfiglio panel also cited Van Houten v. Van Houten, 159 Mich.App. 713, 407 N.W.2d 69 (1987), and Oknaian v. Oknaian, 90 Mich. App. 28, 282 N.W.2d 230 (1979) (alimony contingent upon remarriage was not alimony in gross), Firnschild v. Firnschild, 67 Mich. App. 327, 240 N.W.2d 790 (1976) (alimony contingent upon sale of the marital residence, graduation from high school of the youngest child, and remarriage of the recipient was not alimony in gross), and Couzens v. Couzens, 140 Mich.App. 423, 428, 364 N.W.2d 340 (1985) (while alimony contingent upon remarriage was not alimony in gross, the "provision for termination of alimony on death of the [recipient] does not bear upon the gross alimony issue") for the proposition that if the "continuation of monthly payments is subject to a contingency, the actual amount of the obligation is not ascertainable and thus cannot be considered alimony in gross." Bonfiglio, supra at 64, 507 N.W.2d 759.
[4] The Bonfiglio panel cited Pierce v. Pierce, 166 Mich.App. 579, 420 N.W.2d 855 (1988); Macoit v. Macoit, 165 Mich.App. 390, 418 N.W.2d 476 (1988); Turner v. Turner, 180 Mich.App. 170, 446 N.W.2d 608 (1989); Blake v. Blake, 178 Mich.App. 315, 443 N.W.2d 408 (1989), as well as Tomblinson v. Tomblinson, 183 Mich.App. 589, 455 N.W.2d 346 (1990), Flager v. Flager, 190 Mich.App. 35, 475 N.W.2d 411 (1991) (decree providing alimony until further order of the court shows parties intended modifiable periodic alimony), and Goldberg v. Goldberg, 171 Mich.App. 643, 430 N.W.2d 926 (1988) (condition regarding tax consequences was not sufficient to defeat parties' intent to create alimony in gross). Bonfiglio, supra at 64-65, 507 N.W.2d 759.