BEASON v BEASON

Docket No. 82992. Argued December 6, 1989 (Calendar No. 9). Decided September 11, 1990.

Kenneth P. Beason brought an action in the Monroe Circuit Court against Mary L. Beason, seeking to terminate alimony under the terms of the parties' divorce judgment on the ground that the defendant was residing with an unrelated male. The court, William F. LaVoy, J., granted the plaintiff's motion. The Court of Appeals, WEAVER and G. S. ALLEN, JJ., (GILLIS, P.J., concurring), after review de novo, reversed in an unpublished opinion per curiam, stating that it would have reached a different result (Docket No. 98716). The plaintiff appeals.

In a unanimous opinion by Justice BOYLE, the Supreme Court held:

In a divorce case, the factual findings of a trial court are to be reviewed for clear error. A finding is clearly erroneous if the appellate court, on all the evidence, is left with a definite and firm conviction that a mistake has been committed. While the standard allows an appellate court greater latitude in reviewing a divorce case than that allowed in reviewing a trial by jury, it does not authorize the reviewing court to substitute its judgment for that of the trial court. If the trial court's view of the evidence is plausible, the reviewing court may not reverse. In this case, the Court of Appeals applied an erroneous standard in reviewing the decision of the trial court.

1. Divorce cases are equitable actions, decided by judges rather than by juries. In such cases, the court performs two distinct functions: it must find facts on the basis of the evidence presented, and then it must exercise its discretion in fashioning a disposition. In its fact-finding role, the court must hear the evidence, choose which witnesses to credit when the evidence conflicts, place findings of fact on the record or in a written opinion, and then make a disposition upon the basis of the facts. In this case, the court was required to make a factual

REFERENCES

Am Jur 2d, Appeal and Error § 135.

See the Index to Annotations under Appeal and Error; De Novo Proceedings.

determination regarding the living arrangements of the parties, construe the word "reside" as used in the divorce judgment, and, finally, apply the definition to the facts as it found them to determine whether the defendant's alimony should be terminated.

2. Historically, appellate courts have recognized the superior position of the trial court in evaluating evidence and have hesitated to interfere with factual findings. MCR 2.613(C) reflects a continuation of this recognition, providing that a trial court's factual determinations are entitled to due regard and are not to be set aside unless clearly erroneous. Although our courts have continued to cite a standard of review de novo in divorce cases, the review accorded is not truly de novo. Appellate courts consistently have given deference to the findings of the trial court. Unlike the findings of a jury which are binding in the sense that all inferences in favor of the prevailing party must be accepted, a trial court's factual conclusions in a divorce action are only presumptively correct. The burden is on the appellant to persuade the reviewing court that a mistake has been committed, failing which the appellate court may not overturn the trial court's findings. In a divorce case, a trial court's conclusions of law are not subject to the clearly erroneous standard of review. Where a finding is derived from an erroneous application of law to facts, the appellate court is not limited to review for clear error. Nor is an appellate court so limited where the trial court's factual findings may have been influenced by an incorrect review of the law.

3. In this case, the Court of Appeals applied an erroneous standard of review to the factual determinations of the trial court by inquiring whether it was convinced it would have reached a different result. The decision of the Court must be vacated and the case remanded to afford the trial court the opportunity to clarify the basis of its finding regarding the meaning of the term "reside" as used in the divorce judgment. On remand, the court is to state the legal and factual basis for its definition, specifying which findings are of fact and which of law.

Justice LEVIN, concurring, stated that it has been observed that *Anderson v Bessemer City,* 470 US 564; 105 S Ct 1504; 84 L Ed 2d 518 (1985), adds confusion to the issue what constitutes a clearly erroneous fact finding. In explaining in *Anderson* the meaning of the clearly erroneous standard, the United States Supreme Court elaborated on, but did not withdraw, the "definite and firm conviction" formulation set forth in *United States v United States Gypsum Co,* 333 US 364; 68 S Ct 525; 92 L Ed

746 (1948). The Court said that certain general principles governing the exercise of the appellate court's power to overturn findings of a district court may be derived from the decisions of the United States Supreme Court, the foremost of which is that a finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

Reversed and remanded.

DIVORCE — REVIEW DE NOVO.

In a divorce case, the factual findings of a trial court are to be reviewed for clear error; a finding is clearly erroneous if the appellate court, on all the evidence, is left with a definite and firm conviction that a mistake has been committed; while the standard allows an appellate court greater latitude in reviewing a divorce case than that allowed in reviewing a trial by jury, it does not authorize the reviewing court to substitute its judgment for that of the trial court; if the trial court's view of the evidence is plausible, the reviewing court may not reverse.

*E. J. McCormick, Jr.,* for the plaintiff.

*Ready, Sullivan & Ready* (by *Michael L. Heller*) for the defendant.

BOYLE, J. We consider whether the Court of Appeals properly reversed the trial court's decision to terminate alimony under an express provision in the parties' divorce judgment. We conclude that the Court of Appeals applied an erroneous standard in reviewing the decision of the trial court.

I

After some twenty-eight years of marriage, the parties were divorced by a judgment of the Monroe Circuit Court dated, April 23, 1985, which was taken by settlement of the parties. Pursuant to the divorce judgment, plaintiff Kenneth Beason was to pay alimony of $320 per month to defendant, Mary Beason. The divorce judgment provided, however,

"that said alimony payments shall terminate upon the re-marriage of the said Mary L. Beason or when the said Mary L. Beason should reside with an unrelated adult male person." On April 8, 1986, plaintiff filed a motion for the permanent termination of alimony, alleging that defendant was residing with an unrelated male person, John Robinson, in defendant's house at 15475 Dayton Road in Monroe, Michigan.

At a hearing on plaintiff's motion, John Robinson testified that as a long-distance truck driver, he often made trips lasting several days and that he was outside of Monroe County most of the time. According to Robinson, he considered his residence to be a mobile home which he had purchased in January or February of 1986. Before that, he considered his residence to be an apartment which he rented until the purchase of the mobile home. Robinson stated that "on occasion" he used the mobile home as a mailing address, but that he would have important mail such as paychecks or credit card bills sent to a post office box. He testified that he never used the Dayton Road address as a mailing address. Robinson's thirty-two-year-old niece also lived in the mobile home free of rent and, according to Robinson, performed services such as doing laundry and taking care of the mobile home for him. Robinson testified that he did not keep any clothing or personal articles at defendant's home. He did change clothes at the Dayton Road address after work and before going out to dinner with the defendant, but he changed into clothes that he brought with him. Because of the nature of his work, Robinson carried a change of clothing at all times.

Robinson kept his Trans-Am automobile at defendant's house when he was out of town. Robinson stated that when he went to work he some-

times drove his own car and sometimes drove defendant's, a green Thunderbird. According to Robinson, defendant probably drove his car to work more often than she drove her own.

Robinson testified that he did not help defendant with her bills or give her money. He did maintain her lawn and shrubbery, and would sometimes come over to mow the lawn when defendant was not at home. However, he testified that defendant had not given him a key to the Dayton Road address and had not given him permission to be there when she was not at home. On one occasion, Robinson performed a repair inside the house when defendant was not there. Defendant stated that on this occasion she told Robinson where the spare key was so that he could let himself into the house.

Defendant Mary Beason testified that Robinson was a very frequent visitor to her home and had spent the night there. She stated that they spent most of the time together on weekends, and when Robinson was not out of town, she would see him a lot. Every Friday night he took her out to dinner. Robinson would occasionally pay for groceries if he and defendant went to the store to get something to prepare for dinner. The parties stipulated, however, that defendant paid her own bills for gas, water, electricity, cable television, garbage pickup, and telephone. Defendant testified that she never received mail for Robinson at Dayton Road. According to defendant, Robinson did not keep personal effects such as clothing, a razor, or a toothbrush at her house. Defendant testified that Robinson spent as many as two consecutive nights in a row at her house, and when he had long weekends he generally spent them with her.

There was testimony from Sandra Chittum, the adult daughter of the parties, who stated that she

had seen no evidence of anyone other than defendant living at the Dayton Road address. She had seen no male clothing in the house and when she used items from the bathroom cabinet had never noticed any toothbrushes other than those of defendant and Mrs. Chittum's own sons.

Plaintiff Kenneth Beason hired a private investigator to make observations of defendant's residence on Dayton Road. The surveillance revealed that on three nights, March 21, 22, and 28, 1986 (a Friday, Saturday, and Friday, respectively), defendant and Robinson were seen entering the Dayton Road address and thereafter all the lights went out.

Defendant and Robinson testified that defendant had accompanied Robinson on an over-the-road trip to Texas, and defendant testified that she "might have" accompanied Robinson on a trip to Indiana. Defendant and Robinson both stated their intention to marry, although defendant had doubts because of Robinson's drinking. Because of these doubts and other unexpected events, defendant and Robinson had postponed their wedding at the time of the hearing on plaintiff's motion to terminate alimony.

The trial court in its opinion found John Robinson to be "less than candid" and concluded that his testimony was not to be believed. The court considered the definition of the term "reside" as used in the divorce judgment and concluded, after reference to dictionary definitions of the term and case law in the area of jurisdiction and venue, that "a common meaning of the word is . . . a place where one remains for a time either permanently or continuously . . . a place where a person makes his home." The trial court found Robinson was in the closest telephone contact with defendant, and that since his vehicle was stored at her

home it was logical that upon return from his trips he would go there to secure the vehicle. The court specially noted that Robinson did not leave the vehicle at his mobile home. The court further found that while Robinson did not regularly pay defendant's bills, he did assist her by regularly taking her out to eat. The court noted that although Robinson denied having a key to defendant's house, he had done work there in her absence. The court found this, together with the parties' stated intention to marry, the fact that they had traveled cross-country together, and the fact that Robinson had on numerous occasions stayed overnight at the Dayton Road address, sufficient to show that defendant did reside with an unrelated adult male.

In an opinion by two members of the panel, the Court of Appeals reversed, stating, "We are convinced that we would have reached a different result had we occupied the position of the trial court." Unpublished opinion per curiam of the Court of Appeals, decided January 13, 1988 (Docket No. 98716).

II

Divorce cases are equitable actions that historically were heard and decided by a chancellor rather than a jury. Although Michigan no longer has separate equity courts,[1] divorce actions continue to be decided by judges rather than by juries.[2]

---

[1] Const 1963, art 6, § 5 abolished the distinction between law and equity proceedings as far as practicable, and prohibited the office of master in chancery.

[2] MCL 552.12; MSA 25.92 provides:

Suits to annul or affirm a marriage, or for a divorce, shall be conducted in the same manner as other suits in courts of

In a divorce case, the trial judge performs two distinct functions. First, the court must find facts on the basis of the evidence presented, and then the court must exercise its discretion in fashioning a disposition. In its fact-finding role, the trial court must hear the evidence, choose which witnesses to credit when the evidence conflicts, and, pursuant to MCR 2.517, must place findings of fact on the record or in a written opinion. Upon the basis of the facts, the trial court must then make a disposition of the case. Before the advent of no-fault divorce, the ultimate dispositional ruling was whether a divorce should be granted. Today, the court still must exercise its discretion in fixing the amount of alimony or child support, in dividing property between the parties, or in modifying provisions of the divorce judgment. All of these are dispositional rulings. The trial court's disposition is of course intimately related to its findings of fact, yet it is distinct.

We are not asked here to review a dispositional ruling such as an award of alimony or a modification of such award. Plaintiff Kenneth Beason moved to enforce the terms of the divorce judgment which provided that alimony would terminate if defendant should reside with an unrelated adult male. To rule on plaintiff's motion, the court was required to make a factual determination regarding the living arrangements of the parties. Then, the court was required to construe the word "reside" in the divorce judgment.[3] Finally, the

equity; and the court shall have the power to award issues, to decree costs, and to enforce its decrees, as in other cases.

[3] Construction of the term "reside" may be a question of fact or law. Courts in other jurisdictions, interpreting terms such as "reside," "cohabit" and "live with" as used in divorce judgments which incorporate a stipulation of the parties, generally interpret the judgment in the same manner as a contract. See *Gertrude LQ v Stephen PQ*, 466

trial court had to apply the definition of the term
"reside" as used in the divorce judgment to the
facts as it found them, to determine whether
defendant's alimony should be terminated.

III

Equity actions historically were treated differ-
ently from law cases on appeal. It is frequently
said that divorce cases are reviewed de novo. *Strat-
mann v Stratmann,* 287 Mich 94, 95; 282 NW 914
(1938); *Westgate v Westgate,* 291 Mich 18, 23; 288
NW 860 (1939); *Wells v Wells,* 330 Mich 448, 452;
47 NW2d 687 (1951).

However, in examining Michigan case law to
determine the meaning of "de novo" review, we
find such a variety of terminology and application
that a single clear standard of appellate review
does not emerge. Mindful of our distance from the
trial bench function, we do see one clear and
consistent historical theme: appellate courts have
recognized the superior position of the trial court
in evaluating the evidence and have hesitated to
interfere with factual findings. Very early, this
Court recognized the superior position of the trial

A2d 1213, 1217 (Del, 1983); *Kenyon v Kenyon,* 496 So 2d 839, 840 (Fla
App, 1986). Thus, if the meaning of the terms used is clear and
unambiguous, the decree may be construed as a matter of law. See
*Brown v Brown,* 122 Misc 2d 849, 851-852; 472 NYS2d 550 (1984),
modified 505 NYS2d 648 (1986); *Bell v Bell,* 393 Mass 20, 21, n 1; 468
NE2d 859 (1984), cert den 470 US 1027 (1985). However, where the
meaning is not clear, the court may consider extrinsic evidence to
determine the intent of the parties. *Desler v Desler,* 56 Or App 812,
817; 643 P2d 655 (1982). The rule in Michigan is essentially similar. A
divorce decree is to be construed in light of the findings of fact and
conclusions of law. *Walker v Walker,* 327 Mich 707, 712; 42 NW2d
790 (1950). If it is unambiguous when viewed in this manner, it may
be construed as a matter of law. See *Tessmer v Tessmer,* 261 Mich
681, 683; 247 NW 93 (1933) (read in light of the divorce proceedings,
the decree was not ambiguous). However if the terms used are
ambiguous, they may be interpreted and clarified by extrinsic evi-
dence. *Vigil v Vigil,* 118 Mich App 194, 200; 324 NW2d 571 (1982);
*Bers v Bers,* 161 Mich App 457, 464; 411 NW2d 732 (1987).

court in making factual determinations and, consequently, limited review of such determinations:

> Scattered through the large record there are many traces of truth and of untruth, and numerous instances of coloring and of exaggeration. There is much to believe and much to disbelieve, and the case is one of those where the decision of the judge exercising primary jurisdiction on matters of fact ought not to be overruled by a court of appeal except upon clear and satisfactory grounds. The appellate tribunal ought to be fully persuaded that it *must* have reached a different conclusion had it occupied the position of the court appealed from and been favored with all the advantages of that court for judging rightly. [*Nicholas v Nicholas*, 50 Mich 162; 15 NW 64 (1883). Emphasis in original.]

Despite some shifting degree of certainty which the appellate courts[4] have felt necessary before reversing a factual determination, this Court and the Court of Appeals have recognized the advantage of the trial judge in making factual determinations. While we acknowledge that it is impossible and perhaps unwise to articulate a bright-line standard of review, we take this occasion to observe that it is as true today as when first stated that "[t]here are many aids possessed by the judge who hears the oral testimony in deciding who of the witnesses are truthful that do not get upon the

---

[4] It has been variously stated that the appellate court "generally does not reverse or modify unless convinced that it would have had to reach another result had it occupied the position of the trial court," *Paul v Paul*, 362 Mich 43, 47; 106 NW2d 384 (1960), or "unless convinced that we would have reached a different conclusion had we occupied the situation of the trial court," *Bradley v Bradley*, 292 Mich 370, 372; 290 NW 832 (1940), "that we should have reached a different conclusion had we occupied the position of the trial court," *Wellman v Wellman*, 305 Mich 365, 372; 9 NW2d 579 (1943), or "unless it is clear the reviewing court could have reached a different result had it occupied the position of the trial judge." *York v York*, 113 Mich App 306, 309; 317 NW2d 604 (1982).

printed page." *Donaldson v Donaldson,* 134 Mich 289, 291; 96 NW 448 (1903). This Court has stated that where the circuit judge saw the witnesses and heard the testimony we give great weight to the findings of fact. *Bowler v Bowler,* 351 Mich 398; 88 NW2d 505 (1958); *Hartka v Hartka,* 346 Mich 453; 78 NW2d 133 (1956). It is also said that in a chancery case the decree of the trial court will not be reversed unless the record fails to sustain the decree. *Whittaker v Whittaker,* 343 Mich 267; 72 NW2d 207 (1955); *Kuntze v Kuntze,* 351 Mich 144; 88 NW2d 608 (1958).

Appellate review of a trial court's factual determinations was again addressed in the Michigan Court Rules of 1963. GCR 1963, 517.1, modeled after F R Civ P 52(a), directed:

> Findings of fact shall not be set aside unless clearly erroneous. In the application of this principle regard shall be given to the special opportunity of the trial court to judge the credibility of those witnesses who appeared before it.

The Michigan Court Rules continue to recognize that the trial court has a superior opportunity to determine factual questions, and that the trial court's factual determinations are entitled to due regard. MCR 2.613(C).

Because MCR 2.613(C) and its predecessor do not distinguish between law and equity cases, our appellate courts have struggled from time to time with the apparent contradiction between the historic standard of review de novo in divorce cases and the court rule's command that trial court findings of fact must not be set aside unless "clearly erroneous." While the de novo standard continues to be cited in appellate review of divorce cases, we find that the review accorded is not truly

de novo. The appellate courts have consistently, and properly, given deference to the factual findings of the trial court. Thus, the "clearly erroneous" standard of review articulated in MCR 2.613(C) merely restates the standard of review formerly applicable in chancery proceedings. See Michigan Court Rules Practice (3d ed), R 2.613, pp 575-576.

F R Civ P 52(a), from which GCR 1963, 517.1 (now MCR 2.613[C]) was patterned, "was intended, in all actions tried upon the facts without a jury, to make applicable the then prevailing equity practice." *United States v United States Gypsum Co,* 333 US 364, 394-395; 68 S Ct 525; 92 L Ed 746 (1948). The standard then applicable in federal practice was described as follows:

> The practice in equity prior to the present Rules of Civil Procedure was that the findings of the trial court, when dependent upon oral testimony where the candor and credibility of the witnesses would best be judged, had great weight with the appellate court. The findings were never conclusive, however. A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. [*Id.,* p 395.]

This Court has adopted the standard for clear error set forth in *Gypsum Co* and *Tuttle v State Hwy Dep't,* 397 Mich 44, 46; 243 NW2d 244 (1976). Despite the repeated citation of a standard of review de novo in divorce cases in our state, we recognize today that the definition of clearly erroneous which we adopted in *Tuttle* does not contemplate a review de novo.[5]

---

[5] United States Supreme Court cases subsequent to *Gypsum Co* make explicit that a review for clear error pursuant to F R Civ P 52(a) does not contemplate review de novo:

Pursuant to MCR 2.613(C), then, the Court of Appeals was required to accept the trial court's findings unless those findings were clearly erroneous. In *Anderson v Bessemer City,* 470 US 564, 573-574; 105 S Ct 1504; 84 L Ed 2d 518 (1985), the United States Supreme Court emphasized the deference which is due a trial court's factual determination in a review for clear error under F R Civ P 52(a):

> This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently. The reviewing court oversteps the bounds of its duty under Rule 52(a) if it undertakes to duplicate the role of the lower court. . . . If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

Thus, if the trial court's account of the evidence is plausible in light of the record viewed in its entirety, the Court of Appeals may not reverse.[6] However,

---

In applying the clearly erroneous standard to the findings of a district court sitting without a jury, appellate courts must constantly have in mind that their function is not to decide factual issues *de novo.* The authority of an appellate court, when reviewing the findings of a judge as well as those of a jury, is circumscribed by the deference it must give to decisions of the trier of the fact, who is usually in a superior position to appraise and weigh the evidence. [*Zenith Radio Corp v Hazeltine Research,* 395 US 100, 123; 89 S Ct 1562; 23 L Ed 2d 129 (1969). See also *United States v Yellow Cab Co,* 338 US 338, 341-342; 70 S Ct 177; 94 L Ed 150 (1949).]

[6] Some courts state that a finding which is unsupported by "substantial evidence" is clearly erroneous. See, e.g., *Duty v United States,* 735 F2d 1012, 1015 (CA 6, 1984); *Canizzo v Farrell Lines, Inc,*

This is not to suggest that the trial judge may insulate his findings from review by denominating them credibility determinations, for factors other than demeanor and inflection go into the decision whether or not to believe a witness. Documents or objective evidence may contradict the witness' story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it. Where such factors are present, the court of appeals may well find clear error even in a finding purportedly based on a credibility determination. [*Anderson, supra* at 575.]

Unlike the findings of a jury, which are binding in the sense that all inferences in favor of the prevailing party must be accepted, a trial court's factual conclusions in a divorce action are only presumptively correct. However, the burden is on the appellant to persuade the reviewing court that a mistake has been committed, failing which the appellate court may not overturn the trial court's findings. See 9 Wright & Miller, Federal Practice & Procedure, § 2585, p 729.

The trial court's conclusions of law are not subject to the "clearly erroneous" standard of review. 9 Wright & Miller, *supra,* § 2585, p 732. *Case v Morrisette,* 155 US App DC 31, 39; 475 F2d 1300 (1973). Where a finding is derived from an erroneous application of law to facts, the appellate

---

579 F2d 682, 686 (CA 2, 1978), cert den 439 US 929 (1978). Examination of the origins of this interpretation of the language of Rule 52(a) reveals that a review for substantial evidence is a review for bare sufficiency of the trial court's findings. See *Baltimore & O R Co v Postom,* 85 US App DC 207, 208; 177 F2d 53 (1949); *Miller v Comm'r of Internal Revenue,* 203 F2d 350, 353 (CA 6, 1953); *Federal Security Ins Co v Smith,* 259 F2d 294, 295 (CA 10, 1958). Thus, a finding which is unsupported by substantial evidence *must* be reversed. However, the converse is not true; a finding which is supported by substantial evidence is not immune from further review. See *Jones v Pitt Co Bd of Ed,* 528 F2d 414, 418 (CA 4, 1975); *Williams v Procunier,* 735 F2d 875, 878 (CA 5, 1984), cert den 469 US 1075 (1984). The extent of such further review, of course, is the question before us today.

court is not limited to review for clear error. Nor is an appellate court so limited where the trial judge's factual findings may have been influenced by an incorrect view of the law. *Pavlides v Galveston Yacht Basin, Inc,* 727 F2d 330, 339, n 16 (CA 5, 1984); *Weissmann v Freeman,* 868 F2d 1313, 1317 (CA 2, 1989), cert den 493 US —; 110 S Ct 219; 107 L Ed 2d 173 (1989). *Chaparral Resources, Inc v Monsanto Co,* 849 F2d 1286, 1289 (CA 10, 1988).

In summary, we hold that the factual findings of a trial court in a divorce case are to be reviewed for clear error. A finding is clearly erroneous if the appellate court, on all the evidence, is left with a definite and firm conviction that a mistake has been committed. While this standard gives the appellate judge more latitude than when reviewing a trial by jury, it does not authorize a reviewing court to substitute its judgment for that of the trial court; if the trial court's view of the evidence is plausible, the reviewing court may not reverse.

IV

We find that the Court of Appeals applied an erroneous standard of review to the factual determinations of the trial court when it stated that "although this court hears divorce cases de novo, it will not substitute its judgment for that of the trial court . . . unless convinced that it would have reached a different result." The "would have reached a different result" inquiry, in our view, invites a substitution of judgment by the reviewing court.

However, this case cannot be resolved by a simple application of the clearly erroneous standard of review, because it appears the trial court's findings of fact may have been based on an erroneous view of the law.

The meaning of the term "reside" in the divorce judgment may be a factual or legal question. However, the record before us does not reveal how the trial court arrived at its definition of the term. The trial court resorted to several extrinsic sources to define "reside" without first determining that the term was ambiguous.[7] Until the trial court has been afforded an opportunity to clarify the basis of its earlier findings regarding the meaning of the term "reside," we cannot ascertain whether the proper legal rule has been misapplied in arriving at the findings of fact made below.

Thus, we remand this case to the trial court for consideration of the meaning of the term "reside" in the parties' divorce judgment, and direct the trial court to state the legal and factual basis for its definition of the term, specifying which findings are of fact and which of law. MCR 7.316(A)(7).

We do not retain jurisdiction.

RILEY, C.J., and LEVIN, BRICKLEY, CAVANAGH, ARCHER, and GRIFFIN, JJ., concurred with BOYLE, J.

LEVIN, J. (*concurring*). I have signed the opinion of the Court because I agree that the Court of Appeals "applied an erroneous standard of review to the factual determinations of the trial court when it stated that 'although this court hears divorce cases de novo, it will not substitute its judgment for that of the trial court . . . unless convinced that it would have reached a different result.' The 'would have reached a different result' inquiry, in our view, invites a substitution of judgment by the reviewing court."[1]

---

[7] In making the threshold ambiguity determination, the court may look to the findings of law and fact on which the divorce judgment was based. *Walker, Tessmer*, n 3 *supra*.

[1] *Ante*, p 805.

I also agree that "the factual findings of a trial court in a divorce case[2] are to be reviewed for clear error. A finding is clearly erroneous if the appellate court, on all the evidence, is left with a definite and firm conviction that a mistake has been committed."[3] I further agree that if the trial court's "account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently," *Anderson v Bessemer City,* 470 US 564, 574; 105 S Ct 1504; 84 L Ed 2d 518 (1985), or, as expressed by the Court of Appeals in the instant case, even though the Court of Appeals "would have reached a different result had we occupied the position of the lower court."[4]

It has been observed that *Anderson* "adds confusion to the issue what constitutes a 'clearly erroneous' fact finding."[5]

I write separately to add that in explaining in *Anderson* the meaning of the clearly erroneous standard, the United States Supreme Court elaborated on, but did not withdraw, the "definite and firm conviction" formulation set forth in *United States v United States Gypsum Co,* 333 US 364; 68 S Ct 525; 92 L Ed 746 (1948), adopted by this Court in *Tuttle v State Hwy Dep't,* 397 Mich 44, 46; 243 NW2d 244 (1976). The Court in *Anderson, supra,* p 573, said that "certain general principles governing the exercise of the appellate court's power to overturn findings of a district court may be de-

---

[2] As in most every other case.

[3] *Ante,* p 805.

[4] Unpublished opinion per curiam of the Court of Appeals, decided January 13, 1988 (Docket No. 98716).

[5] Note: *Constitutional fact review: An essential exception to* Anderson v Bessemer, 62 Ind L J 1209, 1228 (1987).

rived from" the decisions of the United States
Supreme Court, and that

> [t]he *foremost* of these principles, as the Fourth
> Circuit itself recognized, is that "[a] finding is
> 'clearly erroneous' when although there is evi-
> dence to support it, *the reviewing court on the
> entire evidence is left with the definite and firm
> conviction that a mistake has been committed."*
> *United States v United States Gypsum Co,* 333 US
> 364, 395; 68 S Ct 525; 92 L Ed 746 (1948). [Empha-
> sis added. *Id.,* p 573.]

It may be helpful to keep in mind, in applying
the *Anderson* elaboration, that the "foremost"
principle is expressed in the formulation set forth
in *United States Gypsum.*