*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KAREN SUE LUECK,

Plaintiff-Appellant,

v

JAMES FREDERICK LUECK,

Defendant-Appellee.

FOR PUBLICATION
May 21, 2019
9:25 a.m.

No. 341018
Oakland Circuit Court
LC No. 2013-814443-DO

Before: REDFORD, P.J., and MARKEY and K. F. KELLY, JJ.

PER CURIAM.

Plaintiff appeals by leave granted the July 20, 2017 order that terminated defendant's obligation to provide spousal support under the parties' divorce settlement and consent judgment of divorce. We reverse.

## I. BACKGROUND

Plaintiff and defendant married in 1985. On September 5, 2014, after 29 years of marriage, they entered into a divorce settlement agreement, and on September 8, 2014, they signed a consent judgment of divorce, which merged and incorporated the terms of their settlement. At the time of their divorce, plaintiff and defendant had two grown children and a sizeable estate. The parties' settlement essentially split their marital assets.

The parties' consent judgment of divorce provided the following regarding alimony/spousal support:

A.   No Spousal Support/Section 71 payments to Defendant by Plaintiff are awarded and same shall be forever waived and barred. This is non-modifiable.

B.   Commencing September 1, 2014 Defendant shall pay to Plaintiff each month, through a direct deposit account that Wife will establish, *alimony/spousal support in the amount of $10,000, for a period of 10 years (120 months), until Wife's death, or until Wife remarries, which ever event was to occur first.* All such payments of alimony/spousal support shall be deductible to Husband for

-1-

income tax purposes pursuant to IRC §215 and includable by Wife in her gross income for tax purposes pursuant to ICR §71, and neither party shall file any income tax return inconsistent therewith. The foregoing alimony/spousal support payments to Wife by Husband shall not be modifiable as to amount or duration. [Emphasis added.][1]

Approximately one year after her divorce, during September 2015, plaintiff met and dated Matthew Bassett. Not long after, plaintiff considered marrying Basset but she decided against it and instead, on December 24, 2015, they participated in a "commitment ceremony" performed at plaintiff's church. Plaintiff considered herself a "spiritual person," did not want to "live in sin," and "wanted to be right with God," and therefore, decided to have a "private prayer ceremony" without guests or witnesses. Plaintiff discussed with her close friend the possibility of losing spousal support and told her that she had done her "homework," and was only having a spiritual ceremony with Bassett because it was not considered legal without a marriage license; and therefore, she could continue to receive spousal support from defendant.

Plaintiff and defendant's mutual friend, Kimberly Kleinfelter, testified that plaintiff told her that she couldn't be married legally under the terms of the divorce but she desired the blessing of God on her union with Bassett. She told Kleinfelter that she intended not to have a marriage under state law so that she could keep her alimony which was important to her.

The lead pastor of the First Congregational Church of Traverse City, Chad Oyer, met plaintiff because she attended the church and had been a "very active" member of his congregation. Oyer testified that plaintiff desired to live in a recognized Christian union where "they put God at the center," so she asked Oyer for "a ceremony of Christian commitment for one another." Oyer testified that plaintiff told him that "a legal civil marriage would compromise" her rights and her alimony would be terminated. Oyer obliged her request because he believed that he could perform a "Christian marriage" without it resulting in a legal marriage. Oyer performed "a ceremony of Christian marriage, and all traditional vows were exchanged within the context that this was a Christian marriage, not a legal or civil marriage." Plaintiff and Bassett exchanged the "traditional Christian vows," represented each other as "husband and wife," and exchanged rings. Oyer performed the ceremony without witnesses present or the signing of a marriage license.

Defendant learned from one of his friends of the private ceremony between plaintiff and Bassett, held at plaintiff's church in Traverse City. Defendant then contacted plaintiff's counsel believing that plaintiff's spousal support should cease under the language of the consent judgment of divorce because she remarried. Plaintiff's counsel told him that plaintiff did not have a "legal" marriage and thus it did not affect his obligation. Defendant, however, understood that the spousal support provision would terminate upon "marriage," and he did not understand the terms of the parties' settlement and consent judgment to mean only upon a "legal marriage."

---

[1] Defendant wished to include a cohabitation clause in the spousal support provision of the Consent Judgment, but plaintiff refused, so one was not included.

Defendant moved for an order dismissing his alimony/spousal support obligation and requested reimbursement, sanctions, and attorney fees.

The trial court held an evidentiary hearing on May 15, 2017. Following the hearing, the parties each submitted proposed findings of fact and conclusions of law. On July 20, 2017, the trial court issued its opinion and order. The trial court found that plaintiff participated in a private religious ceremony performed by her pastor and afterward held herself out as married in a manner that convinced others that she remarried. The trial court concluded that plaintiff signed no marriage license to prevent the termination of her spousal support. The trial court found that plaintiff lacked credibility and concluded that her actions were done to defraud the court and circumvent the parties' consent judgment of divorce. The trial court stated that divorce actions are equitable proceedings and a court of equity molds its relief according to the character of the case. The trial court ruled that equity required the termination of plaintiff's spousal support, and therefore, granted defendant's motion in part and terminated his obligation to pay plaintiff spousal support. This appeal followed.

## II. STANDARDS OF REVIEW

"A consent judgment is in the nature of a contract, and is to be construed and applied as such." *Laffin v Laffin*, 280 Mich App 513, 517; 760 NW2d 738 (2008) (citation omitted). The interpretation of a contract is a question of law reviewed de novo on appeal. *Reed v Reed*, 265 Mich App 131, 141; 693 NW2d 825 (2005). An unambiguous contract must be enforced according to its terms. *Id*. (citation omitted). We review for clear error a trial court's factual findings relating to the modification of spousal support. *Beason v Beason*, 435 Mich 791, 805; 460 NW2d 207 (1990). A finding is clearly erroneous if, after a review of the record, we are left with a definite and firm conviction that the trial court made a mistake. *Draggoo v Draggoo*, 223 Mich App 415, 429; 566 NW2d 642 (1997).

## III. ANALYSIS

We review de novo a trial court's finding "derived from an erroneous application of law to facts." *Beason v Beason*, 435 Mich 791, 804-805; 460 NW2d 207 (1990). We also review de novo a trial court's ruling involving statutory construction. *Fisher v Fisher*, 276 Mich App 424, 427; 741 NW2d 68 (2007). "A divorce judgment entered upon the settlement of the parties represents a contract, which, if unambiguous, is to be interpreted as a question of law." *Holmes v Holmes*, 281 Mich App 575, 587; 760 NW2d 300 (2008). A trial court may modify spousal support based on new facts or different circumstances arising after entry of the divorce judgment. *Ackerman v Ackerman*, 197 Mich App 300, 301; 495 NW2d 173 (1992). The burden is on the party seeking modification to establish that the facts warrant modification. *Id*.

Plaintiff argues that the trial court erred by ruling that her conduct triggered the consent judgment spousal support termination provision. We agree.

In Michigan, a marriage license is required to recognize a "legal marriage" and to obtain certain legal rights and obligations that come with marriage. Michigan law does not recognize common law marriage. MCL 551.2 provides:

So far as its validity in law is concerned, marriage is a civil contract between a man and a woman, to which the consent of parties capable in law of contracting is essential. Consent alone is not enough to effectuate a legal marriage on and after January 1, 1957. Consent shall be followed by obtaining a license as required by section 1 of Act No. 128 of the Public Acts of 1887, being section 551.101 of the Michigan Compiled Laws, or as provided for by section 1 of Act No. 180 of the Public Acts of 1897, being section 551.201 of the Michigan Compiled Laws, and solemnization as authorized by [MCL 551.7 to MCL 551.18].

Michigan law requires persons to obtain and execute a marriage license to have their union recognized as a "legal marriage" pursuant to MCL 551.101, which states in relevant part:

It shall be necessary for all parties intending to be married to obtain a marriage license from the county clerk of the county in which either the man or woman resides, and to deliver the said license to the clergyman or magistrate who is to officiate, before the marriage can be performed.

The consent judgment of divorce in this case contains definite terms regarding the duration of alimony/spousal support and lacks any reference to future adjustments or modifications. By its terms, the agreement plainly contemplated that defendant had the obligation to pay such support "for a period of 10 years (120 months), until Wife's death, or until Wife remarries, whichever event was to occur first." The term "remarries" lacks ambiguity and means only a legal marriage recognized under Michigan law. The record reflects that plaintiff did not marry under Michigan law. Although she went through a commitment ceremony that contained certain embellishments found in many traditional marriage ceremonies, absent a marriage license and solemnization as authorized by MCL 551.7 to MCL 551.18, plaintiff's conduct did not constitute a marriage that triggered the spousal support termination provision of the parties' consent judgment of divorce. The trial court erred by finding that plaintiff conducting herself as though married to Barrett constituted conduct that could be interpreted to trigger the spousal support termination provisions of the parties' settlement and consent judgment of divorce. The unambiguous terms of the consent judgment of divorce governs when defendant's spousal support obligation terminates and those terms were not met by plaintiff's conduct. Therefore, the trial court erred by finding that, although no marriage license was signed, plaintiff acted in a manner that required the termination of defendant's spousal support obligation.

The trial court committed clear error respecting the facts found by the trial court. Further, the trial court erroneously applied the law to the facts of this case. Consequently, defendant failed to meet his burden to establish that the facts warranted modification of his spousal support obligation.

-4-

We reverse and remand this case to the trial court to enter an order reinstating plaintiff's spousal support as provided under the terms of the consent judgment of divorce. We do not retain jurisdiction.

/s/ James Robert Redford
/s/ Jane E. Markey
/s/ Kirsten Frank Kelly