*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CHERYL ANN PAYNE,

       Plaintiff/Counterdefendant-
       Appellant,

v

WILLIAM HORACE PAYNE,

       Defendant/Counterplaintiff-
       Appellee.

UNPUBLISHED
May 23, 2019

No. 342865
Keweenaw Circuit Court
LC No. 2013-000720-CK

Before: SHAPIRO, P.J., and BORRELLO and BECKERING, JJ.

PER CURIAM.

Plaintiff Cheryl Payne appeals the trial court's post-judgment order modifying defendant William Payne's obligation to pay her living expenses under the parties' 2010 settlement agreement. For the reasons stated below, we affirm.

## I. BACKGROUND AND PROCEDURAL HISTORY

Cheryl and William were married for 25 years. William is a successful musician. Cheryl is a homemaker who did not earn outside income. They divorced in 2010. The financial aspects of the judgment of divorce were all agreed to by the parties in a written settlement agreement.

The agreement divided the real and personal property into two essentially equal portions. The financial part of the settlement agreement divided some accounts in half. There were also three sources of future income streams: two pensions and royalty payments. The pensions were divided into equal interests and Cheryl was to receive 40% of William's royalty income. In addition, William will pay Cheryl traditional monthly spousal support of $1500 until she reaches the age of 66.

Relevant to this appeal, William was also required to continue making deposits into a joint bank account (household account) for the purpose of payment toward Cheryl's "legitimate living expenses," described as "commonplace expenditures routinely incurred in ordinary course of life," including but not limited to her property taxes, car payments, utility bills, prescription

-1-

costs, medical and dental costs, insurance premiums, co-pays, dry cleaning expenses, lawn work, gardening, plow service costs, pet expenses, and accountant fees. The provision prohibited the use of these funds for "luxury goods or services." This obligation also terminates when Cheryl reaches the age of 66.

William's annual obligation to the household account was set at $35,000. The parties agreed that once Cheryl began drawing monthly benefits from William's pensions, which she was required to do when William did, there was to be a setoff of 90% of Cheryl's pension payments against William's obligation. At the age of 67, William could petition the trial court to reevaluate his obligation "based upon and limited to such issues such as Cheryl A. Payne's actual living costs and sources of present and projected future income, and William H. Payne's present and projected future income."

In January 2013, Cheryl filed an action seeking to enforce the settlement agreement and claiming that William failed to complete several actions required by the agreement. Cheryl asserted in part that William failed to make required deposits into the household account and failed to pay her share of royalties. William counterclaimed, asserting in part that Cheryl was misusing the household account. William turned 67 during the pendency of that case, and in April 2016, he filed a motion to terminate his obligation to pay Cheryl's household expenses.

In December 2016, the parties reached an agreement resolving Cheryl's claims; the household account obligation was the sole remaining issue. The parties agreed that Cheryl would provide a list of her household expenses prior to a review hearing.

The hearing was held in November 2017, at which time Cheryl was 60 and William was 68. The trial court received numerous exhibits into evidence and heard testimony from the parties, William's accountant and Cheryl's tax preparer.

In January 2018, the trial court issued a written opinion and order reducing William's obligation toward the household account to $12,521.71 annually. The court decided that William had sufficient income to continue contributing to the household account. The court then found that Cheryl's annual income was $61,000, but determined that it would not consider Cheryl's pension income for purposes of the reevaluation because the parties' agreement "addressed the effect of pension," i.e., it reduced William's obligation by 90% of the pension payments. The court also ruled that it would not consider Cheryl's spousal support as part of her income. Thus, for purposes of reevaluating the household account obligation, the court determined that Cheryl's relevant annual income was $28,476. The court then found that Cheryl's "actual legitimate living expenses" were $54,079.21. Accordingly, the court determined that Cheryl's relevant income was insufficient to pay her living expenses and she was experiencing a "shortfall" of $25,603.21.

The court then applied the parties' agreement to set off 90% of Cheryl's pension income against the household account obligation. According to the trial court's opinion, Cheryl received $14,535 in pension payments in 2016, and William was therefore entitled to a reduction of his obligation equivalent to 90% of that sum, which amounts to $13,071.50. Thus, the trial court reduced the "shortfall" of $25,603.21 by $13,081.50 to determine that William's new annual household account obligation was $12,521.71.

II. ANALYSIS

A. HOUSEHOLD EXPENSES

On appeal, Cheryl argues that trial court made multiple errors in calculating her annual household expenses. We disagree.[1]

Cheryl first argues that the trial court clearly erred by failing to include the costs of food, entertainment, clothing as part of her household expenses. We agree with Cheryl that these expenses constitute "actual living costs" and thus possibly could have been considered by the trial court in reevaluating the household account obligation either as items to be paid from the household account or as expenses outside the account that must be paid out of her own income. However, Cheryl failed to present evidence of those costs at the hearing. Specifically, she did not include those costs in the exhibit listing her household expenses, and she did not represent them as items paid from that account. Nor did Cheryl present any other evidence from which the trial court could have made findings as to how much of her income she spends on those items. Accordingly, we find no error in the trial court not accounting for those costs in its reevaluation.

Cheryl next argues that the trial court clearly erred in failing to consider future costs, such as increased health insurance costs and proposed repairs, in determining her actual living expenses. With respect to health insurance, Cheryl's list of expenses included her actual health insurance costs for 2016 to 2017. The trial court noted that the insurance premium increased by $88 in 2017 and the court adjusted Cheryl's annual expense calculation accordingly. However, she contends that the trial court erred by not including future health insurance increases in its calculations. The trial court noted that while Cheryl requested the consideration of future expenses, the parties' agreement did not authorize such considerations. Indeed, the settlement agreement allowed only for consideration of "actual" expenses. *Merriam-Webster Collegiate Dictionary* (11th ed) defines "actual," in part, as "existing or occurring at the time . . . ." More to the point, the agreement specifically allowed for consideration of the "present and projected future income" of each party but makes no reference to projected future expenses. Accordingly, future expenses are beyond the scope of the parties' reevaluation criteria, and the trial court did not clearly err in rejecting Cheryl's request to consider those costs.

Cheryl also argues that the trial court erred by excluding her legal costs when determining her annual household expenses. As the trial court noted, legal costs are not

---

[1] The interpretation of a settlement agreement is construed as a contract, which involves a question of law that we review de novo. *Myland v Myland,* 290 Mich App 691, 700; 804 NW2d 124 (2010), citing *MacInnes v MacInnes,* 260 Mich App 280, 283; 677 NW2d 889 (2004). A trial court's findings of fact are reviewed for clear error. *Richards v Richards*, 310 Mich App 683, 693; 874 NW2d 704 (2015). "A finding is clearly erroneous if the appellate court, on all the evidence, is left with a definite and firm conviction that a mistake has been committed." *Beason v Beason*, 435 Mich 791, 805; 460 NW2d 207 (1990). We must affirm the trial court's dispositional ruling unless we are firmly convinced that it was inequitable. See *Loutts v Loutts,* 310 Mich App 683, 690; 874 NW2d 704 (2015).

"commonplace expenditures routinely incurred in the ordinary course of life." Cheryl does not provide authority, and we have found none, to support a conclusion that legal fees constitute "legitimate living expenses" or an expense that is "routinely incurred in the ordinary course of life." We also note that legal fees were not among the items enumerated in the parties' settlement agreement as a legitimate living expense to be paid from the household account. Accordingly, there is no indication that the parties ever intended to treat legal fees as an expense subject to payment from the household account.

## B. CALCULATION OF THE HOUSEHOLD ACCOUNT OBLIGATION

Next, Cheryl argues the trial court erred in calculating William's household account obligation by including a "double set-off" for the pension benefits she receives. Although this argument has facial appeal, on closer examination it is without merit.

The trial court reevaluated the household account obligation by determining the difference between Cheryl's income and her living expenses. In other words, the court set the obligation at an amount sufficient to pay Cheryl's living expenses not covered by her existing income. Cheryl argues that the trial court could and should have used different methodologies in determining the amount. For example, she argues that the $35,000 figure should only be adjusted to the degree the parties income and expenses have changed since 2010 when the parties agreed to a household account based on the then existing income and expenses. We agree that the trial court could have used such an approach, but we cannot say that the agreement to "reevaluate" William's obligation restricted the court to such a comparative method. The court was free to review the parties' current financial situation and make a new determination.

To do so, the trial court's first step was to determine Cheryl's income. Cheryl had an annual income of $61,000, but for purposes of reevaluating the household account obligation, the trial court reduced that amount by Cheryl's pension income and spousal support. Under the court's method of calculation, a reduction in Cheryl's income *increased* the "shortfall" between her income and her living expenses and therefore increased the amount of the reevaluated obligation. Thus, contrary to Cheryl's argument, William did not receive a "credit" when the court did not count the pension income.

The court then determined that the difference between Cheryl's relevant income and living expenses was $25,603.21. And, had the parties' agreement not provided otherwise, it appears that this would have been the amount of William's reevaluated obligation. However, per the settlement agreement, William was to receive a 90% credit for Cheryl's pension income. So the trial court reduced the amount of the obligation by that amount, resulting in an annual house account obligation of $12,521.71. There was nothing improper about this reduction as it was mandated by the parties' agreement. Regardless of how the trial court calculated the reevaluated obligation, ultimately that amount would have been further reduced by 90% of Cheryl's pension income.

In sum, the trial court's calculations did not improperly give William a "double credit" for Cheryl's pension income. And, as noted, while there may have been alternative ways for the court to reevaluate the household account obligation, the method chosen by the trial court

satisfied the standard agreed to the by the parties, i.e., it was based on Cheryl's income and living expenses and William's income. Therefore, the court's ruling was not erroneous.

## C. DISCOVERY

Finally, Cheryl also argues that the trial court abused its discretion when it limited the scope of discovery to William's income in 2016 and 2017. Again, we disagree.[2]

Generally, the scope of discovery extends to any matter that is not privileged and is relevant to the subject of any claim in the action or is calculated to lead to the discovery of admissible evidence. MCR 2.302.

In October 2017, Cheryl moved the trial court to compel discovery. She sought, in part, William's tax returns for 2013 through 2016, including all attachments, schedules, W-2s, and 1099s. After a hearing, the trial court ruled that it would only consider William's income at age 67 or older, "not income history." Accordingly, the court ordered that William was only required to produce his 2016 income tax returns and attachments because his present income was at issue. The court also ordered William to produce all documents pertaining to his 2017 income to date, together with documents reflecting concrete information as to his future earnings.

Cheryl argues that the trial court should have found that "the schedules, W-2s and 1099s" were relevant to determining William's "present and projected future income." Although it is not entirely clear, we infer from Cheryl's argument that she is referring to William's pre-2016 tax documents. However, the parties' settlement agreement is clear—only William's "present and projected future income" was to be considered during the reevaluation of his obligation. While proof of William's pre-2016 income could have been used to project his future income, the best indicator was his current income. For those reasons, the trial court did not abuse its discretion in limiting the evidence to William's 2016 and 2017 incomes.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Stephen L. Borrello
/s/ Jane M. Beckering

---

[2] A trial court's ruling on a motion regarding discovery is reviewed for an abuse of discretion. *Holman v Rasak*, 486 Mich 429, 436; 785 NW2d 429 (2010). An abuse of discretion occurs when the result is outside the range of reasonable and principled outcomes. *Woodington v Shokoohi,* 288 Mich App 352, 355; 792 NW2d 63 (2010).