*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CARNIGEE TRUESDALE,

UNPUBLISHED
September 22, 2022

Plaintiff-Appellee,

v

No. 360205
Oakland Circuit Court
Family Division

WILLIAM KENNETH HOWARD,

LC No. 2016-847927-DM

Defendant-Appellant.

Before: RONAYNE KRAUSE, P.J., and JANSEN and SWARTZLE, JJ.

RONAYNE KRAUSE, P.J. *(dissenting)*

I respectfully dissent. As the majority explains, a trial court "shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child." MCL 722.27(1)(c). A change in parenting time can have the effect of altering a child's established custodial environment, and a trial court may not effectuate such a change "without first making the findings required by MCL 722.27(1)(c)." *Daly v Ward*, 501 Mich 897, 898; 901 NW2d 897 (2017). It is not so clear to me as it is to the majority that the changes effectuated by the trial court's order will "change whom the child naturally looks to for guidance, discipline, the necessities of life, and parental comfort." *Pierron v Pierron*, 486 Mich 81, 86; 782 NW2d 480 (2010). Nevertheless, presuming for the sake of discussion that the practical effect of the trial court's order was to change the children's custodial environment, I disagree that doing so was improper under the circumstances.

The trial court made extensive findings, which, in relevant part, included the following discussion:

VIII. Custody and Parenting Time

The Court finds that Plaintiff has not established her burden of proof by clear and convincing evidence that changing custody is warranted. The children have an established custodial environment with both parents. The parties have and shall continue to have joint legal and physical custody of AH and MH.

-1-

The matter being in front of the Court on both parties' Motions, the Court is vested with the authority and responsibility to act in the children's best interests. The Court adopts its reasoning and findings from Sections VI. and VII. here [exhaustively going through the statutory best-interest factors and the statutory parenting-time factors, finding them equal or favoring plaintiff, and also setting forth how the current school and parenting-time situation was harming the children] and incorporates them by reference.

The Court changes the parenting time schedule as necessary to accommodate the children's best interests. The necessity of this was demonstrated by a preponderance of the evidence. While Defendant will have less overnight parenting time during the school week, it will not substantially change his relationship with the children and efforts were made, as best as possible, to afford him mid-week parenting time and extended weekends in a manner that would not disrupt the children's consistency in attending school on time without having to travel 45 to 60 minutes each way on school days.

The following modifications are necessary to bring more consistency and stability for the children, to minimize the frequency of exchanges between the parents, and to address the burden the children have faced by spending so much travel time in the car every school day. Frequent exchanges between the parents in combination with the homes being drastically different environments due to different parenting styles contribute to demonstrated mental health problems for the children. Additionally, to allow the children to be in a school environment where they can develop closer relationships with staff and peers that will be supportive of them and counter the effects of their parents' toxic environment, the school year parenting time must change. During the school year, upon entry of this Order, Defendant shall have every other weekend with the children from Friday after school, or 4 pm if no school, until Sunday at 7 pm. Defendant will have parenting time on every Wednesday after school, or 4 pm if no school, until 7 pm to maintain consistency and his relationship with the children.

In the event that the children and Defendant do not have work/school and Plaintiff is working on a Monday immediately following Defendant's parenting time, Defendant shall have additional parenting from 7 pm on Sunday until 7 pm on Monday.

The parties shall continue to follow the existing holiday parenting time schedule. The holiday parenting time schedule supersedes the regular parenting time schedule, even as modified in this Order.

For summer parenting time, beginning the first Friday after school gets out, the parents shall alternate weeks of parenting time with exchanges occurring on Fridays at 6 m. Defendant shall have the first week of summer parenting time.

XI. School Enrollment

The established custodial environment will not be disrupted by a change in school enrollment. Therefore, Plaintiff's burden of proof was a preponderance of the evidence standard. The Court adopts its reasoning and findings from Sections VI. and VII. here and incorporates them by reference.

Plaintiff demonstrated her burden of proof that it is in the children's best interests to return the children to the prior school district.[1] The testimony demonstrated that the number of exchanges and travel time negatively impacts the children. The children are additionally tired from getting up early and assignments go missing due to it having been left at the other parent's home. The parents' complete inability to cooperate and ongoing conflict is further reason to minimize the amount of exchanges. Several professionals, including therapists and CPS workers, have raised concerns regarding the parties high-conflict relationship. Professionals have raised these concerns since nearly the date this case was filed.

Defendant made a choice to move a considerable distance from the marital home. Further, his employment with the Detroit Public Schools is not near either proposed school. Defendant created a feasibility problem for school enrollment. His inability to transport the children to Oxford is a problem of his own making. Defendant moved to Southfield and testified that he had the paternal grandfather driving the children to Oxford. Defendant's decision to move and the burden he put upon his father – one that he himself does not wish to bear – demonstrate that he was placing his desires above those of others.

The children do not have a significant connection to their current school. As recommended by the GAL, the Court agrees that the children would benefit from attending school in their neighborhood school. It will assist them in making friends, feeling grounded in a community, and be important as they age and wish to play sports or engage in extracurriculars that require a more expansive after school availability.

The decision to enroll the children in Avondale made sense based on the school's location. It was more easily accessible from both parents' homes, and they were both routinely exercising parenting time during the school week. It was the determination based on the known factors at that time. Defendant continues to claim that Avondale is more diverse, and argued this would be beneficial to the children, but presented no actual data or other evidence that there is any substantial difference between either proposed school. At this point, however, the location of the school is no longer a paramount concern given the continued toxicity between the parents, the toll the transportation is taking on the children, the need for the children to feel part of a community, the children's inability to build strong

---

[1] Of note, the children previously attended the Oxford school following the parties' divorce until defendant moved away from the area and sought to have the children transferred to the Avondale school.

relationships while in Avondale Schools due to remote learning, and the severe mental health problems the children have due to their overall situation.

The ongoing tumult between the parents and inability to co-parent well is impacting the children negatively. The children attended a year entirely online in Avondale and are presently in person again. Due to the timing of the move and the ongoing COVID-19 Pandemic, the children have had a disrupted education at Avondale. It is unclear if further interruptions may occur with in-person learning at Avondale. Likely, the children do not feel a part of any school community. The children need a familiar, supportive community to let them thrive. The children shall be returned to the school AH feels most familiar: Lakeville Elementary in Oxford.

The lynchpin of this appeal is, effectively, the trial court's conclusion that plaintiff had not established by clear and convincing evidence that a change of custody was warranted. Notwithstanding the trial court's baffling statement to that effect, its *actual findings* unambiguously establish that the change—however characterized—was overwhelmingly in the children's best interests.

Our Supreme Court has explained that "[w]hen a court incorrectly chooses, interprets, or applies the law, it commits legal error that the appellate court is bound to correct." *Fletcher v Fletcher*, 447 Mich 871, 881; 526 NW2d 889 (1994). However, our Supreme Court has simultaneously cautioned that some legal errors may be harmless, warranting no action by this Court. *Id*. at 882. Indeed, a significant goal of the Child Custody Act is to avoid harming children by subjecting them to unnecessary changes in their custodial environment. *Daly*, 501 Mich at 897. There is "a strong presumption in favor of the findings of trial judges in custody matters." *Dempsey v Dempsey*, 409 Mich 495, 498; 296 NW2d 813 (1980). Traditionally, whether a trial court properly applied the law to the facts—in other words, the court's conclusions drawn from its factual findings—is reviewed with considerably less deference. See *Beason v Beason*, 435 Mich 791, 804-805; 460 NW2d 207 (1990); *Book-Gilbert v Greenleaf*, 302 Mich App 538, 542; 840 NW2d 743 (2013). In this case, I conclude that the distinction is critical.

The substantive factual findings made by the trial court powerfully show that the children were in dire need of a change in their schooling arrangement and frequency of parenting-time exchanges. Nothing in the record suggests that the trial court's factual findings in that regard were against the great weight of the evidence. MCL 722.28. Presuming the majority is correct in holding that the changes would effectuate a change in custody, the trial court primarily erred by failing to realize the legal ramifications. Functionally, however, its substantive findings allow only one conclusion: that the need for such a change was proven by clear and convincing evidence. I would conclude that the impressive thoroughness of the trial court's factual findings renders its error harmless, and on that basis, I would affirm. However, at a minimum, I disagree with the majority's decision to vacate the trial court's order outright. Rather, in the interest of avoiding any more unnecessary disruption to the children's lives, I would remand for reevaluation, taking into account up-to-date information, and leave the trial court's order conditionally untouched in the meantime. See *Fletcher*, 447 Mich at 889-890.

/s/ Amy Ronayne Krause